(Decided March 15th 1865.)

---

- JACOB M. KUNKEL *vs.* PEREGRINE FITZHUGH ET AL.

PRACTICE IN EQUITY : JURISDICTION IN EQUITY : ESTOPPEL: MORTGAGE FROM MAKER OF A PROMISSORY NOTE TO A SURETY, ENURES TO THE BENEFIT OF THE PAYEE.—P. F. with S., his wife, and S. F., as joint makers and sureties, executed his single bill to J. J. for $4,000, and to secure its payment and save his sureties from loss, executed to S. F. a mortgage of certain personal property: Afterward P. F., having entered into a co-partnership with J. M. K., sold, and with the said S. & S. F., conveyed to him a moiety of certain real and personal estate, of which that covered by the mortgage to S. F. formed part; J. M. K. retaining in his hands, by agreement, $10,000 of the purchase money to satisfy his proportion of existing lien. The said co-partnership having been dissolved, P. F. entered into a second engagement with J. M. K., by which the latter should have exclusive possession of the joint property, and should pay the late co-partnership debts, and to secure the performance of said engagement, executed to him a mortgage of the co-partnership property. P. F., failing to comply with certain stipulated conditions, J. M. K. filed a bill and obtained a decree for the sale of the mortgaged property, and sold the same, including that mortgaged to S. F., reporting the sale of the latter separately for distribution. Thereupon, M. J., executor of J. J., and holder of the single bill for $4,000, intervened by petition, praying to be substituted to the rights of S F., and to have payment of his claim out of the proceeds of the property mortgaged to her. HELD :

1st. That the fund in question having been brought into a Court of Equity, upon a proceeding properly instituted by himself, J. M. K. is not now at liberty

to dispute the jurisdiction of the Court over the subject matter of the proceeding, nor its power to make distribution according to the equitable rights and priorities of all the parties interested.

2nd. That even on the theory that M. J. had a remedy at law, which he was bound to exhaust before he could proceed in Equity, yet that rule does not apply where the subject matter of his ultimate equitable remedy is brought into a Court of Equity, for adjudication, on a proceeding properly instituted by other parties; for jurisdiction in Equity having once attached, it will be maintained for the protection and final adjudication of all the rights and interests involved.

3rd. That M. J. is clearly entitled to the benefit of the security of the mortgage to S. F., and the fact that P. F. and his sureties, S. and S. F., joined in a conveyance to J. M. K. of an undivided moiety of the property mortgaged to S. F., would seem to have no effect upon the equitable rights of M. J.; and the more especially where J. M. K. not only accepted the conveyance with full knowledge of the mortgage, but was allowed to retain in his hands a sufficient sum of the purchase money to protect his interest in the property from the creditor's equitable claim to the benefit of the mortgage to the surety.

APPEAL from the Equity side of the Circuit Court for Frederick County.

This is an appeal from an order of the Circuit Court for Frederick County as a Court of Equity, ratifying an auditor's account. The facts of the case are fully stated in the opinion of this Court.

The cause was argued before BARTOL, GOLDSBOROUGH, and COCHRAN, J.

*Jos. M. Palmer* and *Robert J. Brent*, for the appellant.

The only question upon the record arises on the petition of Montgomery Johns, as executor of John Johns, to be substituted to the benefit of the mortgage of indemnity to Mrs. Sophia Fitzhugh. This petition does not aver the insolvency of the makers of said note, nor that the petitioner is remediless at law, but claims the naked right, as creditor at large, to be substituted in equity to the benefit of the mortgage provided by the principal debtor as indemnity for the surety. It is clear that this mortgage

could not avail the surety until she was damnified by paying the money. 2 *Greenleaf Ev.*, sec. 113, *&c.* *Hall's Adm'rs vs. Cresswell*, 12 *G. & J.*, 36.

We do not propose to question the general right of a creditor to claim the benefit of a security given by the debtor to his surety. This general principle is recognized in 1 *Eq. Cases Abridged*, 93 *K.* *Wright vs. Morley*, 11 *Vesey*, 22. In the latter case the principle is announced as analogous to the right of a surety to claim the benefit of all liens and securities held by the creditor for his claim, but it is so announced under the doctrine of marshaling securities. And the principle is announced by Judge Story under the same doctrine of marshaling securities. 1 *Story's Eq.*, sec. 640. It is but an equitable right, and can only be enforced on principles of substitution in a Court of Equity. No case can be produced where the legal title has been held to be vested .elsewhere than in the mortgagee. To wrest this legal title from the mortgagee or pledgee, the creditor or the surety of the debtor may appeal to a Court of Equity for subrogation. But this appeal must be based upon the acknowledged doctrines of a Court of Equity.

The party seeking relief must show that he is remediless at law. If the creditor holds a legal obligation, available at law for the recovery of his debt, he has no right to waive his legal forum and come into equity *a priori* to secure a lien he never contracted for. He has the right to come for relief when he is remediless at law, as in the case of any other equitable right. If this be so, the petition is utterly at fault, and neither avers the insolvency of the legal debtors, nor any hindrance or impediment to the legal recovery of the debt. It seeks, without excuse or apology, the substitution to a security provided for the indemnity of a surety who has never been and may never be damnified upon the case as made out by this petition.

M. Johns claims by subrogation to become an equitable assignee, under Mrs. Sophia Fitzhugh, of the mort-

gage property, yet he assumes greater rights than his assignor would have, and seeks flagrantly and palpably to overreach all the intermediate acts of his assignor, and all her renunciations and releases of that mortgage. Is this right of substitution any paramount title reaching back to and inherent in the original mortgage? If so, it would enable a secret creditor successfully to spring his equity years afterwards upon the unwary purchaser for value of the legal title, and this case is the strongest illustration of the injustice of the pretension. We regard the right of the creditor to substitution as not only restricted by the rules of equity to the case of a want of legal remedy for the recovery of his debt, but restricted by all the conditions attached to the doctrine of election.

That the creditor has an option to pursue his legal remedies, or to elect to claim his right of subrogation, is proved by all the authorities. 1 *Story's Eq.*, sec. 640. *Hopewell vs. Bank of Cumberland*, 10 *Leigh's Rep.*, 206 and 221. If this be so, he has no rights until he elects, and by not exercising his election until September 1861, he necessary left the property at the mercy and control of the surety, for whose benefit and indemnity alone the mortgage of July 1855, was created.

The surety has the power to release, and if that is exercised and consummated at law or equity, before the creditor has made his tardy election to claim the security, there is an end of the question.

Finally, we contend that the right of substitution claimed by M. Johns, is but a derivative right, to be claimed under the mortgagee, Mrs. Fitzhugh. It seems to be analogous to "the right of partnership creditors to work out their equitable lien on the partnership assets through the medium of the equities of the partners, when the partners have not parted with their lien" *Ragan vs. Gaither*, 11 *Md. Rep.*, 573. *Story on Partnership*, sec. 360. *Glenn vs. Gill*, 2 *Md. Rep.*, 16.

The partnership creditor may be substituted to the equitable lien of the partners on the social assets, but as it is to be derived through the medium of the partners, it results that when the partners have bona fide *"inter sese"* released their lien on the assets by a transfer from one to the other, or by a sale to a stranger, the derivative title utterly fails. *Armstrong et al., vs. Fahnestock et al.,* 19 *Md. Rep.,* 58. 4 *Md. Ch. Dec.,* 264. *Tiernan vs. Res cannier,* 10 *G. & J.,* 224, and *Gist vs. Cockey,* 7 *H. & J.,* 134.

*I. Nevett Steele* and *J. Prentiss Poe,* for the appellee, having briefly discussed the case as a litigation between the appellant and Sophia Fitzhugh, further argued as follows :

But the case is not presented to the Court in this aspect.

John John's estate, to whom the debt of four thousand dollars was due, has intervened, and claimed the proceeds upon the familiar doctrine of equitable subrogation.

P. Fitzhugh, the debtor, gave to Mrs. Sophia Fitzhugh the mortgage in question, to secure her as his surety upon the single bill for four thousand dollars. The single bill is not paid, the proceeds of the mortgage property are in Court, and the creditor, the surviving executor of John Johns, files his claim, and insists that he is entitled to them, upon the ground as old as the time of the "Equity Cases, Abridged," that in equity "a creditor is entitled to the benefit of all the securities the principal debtor has given to his surety," to the same extent as the "surety has a right to the benefit of all the securities the principal debtor gives to the creditor." *Wright vs. Morley,* 11 *Vesey, Jr.,* 22. 1 *Eq. Ca. Abr.,* 93, No. 5. 1 *Story's Eq. Jur.,* secs. 499 & 638. *Hodgson vs. Shaw,* 3 *Mylne & Keen,* 190. *Eastman vs. Foster,* 8 *Met.,* 20. *Paris vs. Hulett,* 26 *Vt.,* 312. *Markel vs. Eichelberger,* 12 *Md. Rep.,* 79, 86. *Clagett vs. Salmon,* 5 *G. & J.,* 326, 352. *Semmes*

*vs. Naylor,* 12 *G. & J.,* 358, 364. *Albert vs. Winn & Ross,* 4 *Md. Ch. Dec.,* 253. *Moses vs. Murgatroyd,* 1 *Johns. Ch. Rep.,* 128. *Ware vs. Otis,* 8 *Greenlf. R.,* 387. *Heath vs. Hand,* 1 *Paige,* 330. *Keys vs. Brush,* 2 *Paige,* 311. *Curtis vs. Tyler,* 9 *Paige,* 435. *Lowndes vs. Pinckney,* 2 *Rich. Eq.,* 155. *Ohio Life Ins. & Trust Co. vs. Reeder,* 18 *Ohio,* 35. *Horner vs. Savings Bank,* 7 *Conn.,* 483, 484. *New London Bank vs. Lee,* 11 *Conn.,* 118, 119. *Belcher vs. Hartford Bank,* 15 *Conn.,* 383. *Joulmin vs. Hamilton,* 7 *Ala.,* 367, 368. *Bk. of Mobile vs. Robinson,* 19 *Ala.,* 802. *Taylor vs. Morrison,* 26 *Ala.,* 729. *Bush vs. Stamps,* 26 *Miss.,* 463. *Rees vs. Berrington, Le. Ca. in Eq.,* 367, *note.*

It is contended for the appellant, that Sophia Fitzhugh released the said mortgage by uniting in the deed of the 25th November 1856, to the appellant. We contend in reply to this view, that she never even in form released but one-half of said property, and that her act in doing this, cannot possibly be extended so far as to operate as a release of the whole. We also maintain that she united in said deed upon the express agreement, as proved by Mr. Wm. J. Ross, that the appellant was to pay the other half of said debt of four thousand dollars, and retained two thousand dollars out of the purchase money for the Catoctin property real and personal, for that purpose, and that it would be glaringly inequitable to give him the benefit of the agreement without imposing upon him the corresponding burthen. If the Court concur with us upon these points, the order of the Court below will be affirmed. But conceding for the sake of the argument, that she did in fact release the said one-half without any such agreement, and that such release evidenced by her joining as grantor in the deed of 25th November 1856, can be extended by implication to a release of the whole, still we maintain that, according to the principles applicable to such cases, as established by the

numerous authorities cited in our brief, the rights of the principal creditor, Montgomery Johns, executor of John Johns, are unaffected thereby, and that he has a right to the proceeds of the property mortgaged to the surety, Mrs. Fitzhugh.

Here the appellant, at the time the co-partnership between P. Fitzhugh and himself was formed, had actual notice, as well as constructive notice from the record, of the existence of the mortgage of July 11th 1855, and of the purpose which it was designed to accomplish. Though in form, an indemnity to Sophia Fitzhugh; in reality, it was a security for John Johns, and may well have formed one of the considerations upon which he agreed to loan the four thousand dollars. The testimony of Mr. Ross, and the agreement of the appellant, prove his actual knowledge of the whole transaction. The security in the hands of Sophia Fitzhugh was a trust for John Johns, and upon her conveyance of it to the appellant with notice of the mortgage, he took it subject to the same trust. That he understood it in this light would seem to be proved by the fact of the agreement which he made— and which cannot well be explained otherwise. There is nothing inequitable or strained in this,—it simply throws the burden of a debt in a case of this description where it properly belongs, upon the principal debtor and not upon the surety; and here its effect will be to promote the substantial justice of the case. The decision reported in *Eastman vs. Foster*, 8 *Metcalf*, 20, is a strong authority in point.

It will be observed that the general doctrine of equitable subrogation, as asserted by us, is conceded by the counsel for the appellant, but they deny its applicability to this case. The appellee, it is said, is not remediless at law, and therefore equity has no jurisdiction. It is apparent, however, from the brief of the appellant and the two records in the case, that any resort at law, by the

appellee to the joint makers of the single bill, would have been fruitless.  P. Fitzhugh is admitted to be insolvent.  His wife, Sarah Margaret Fitzhugh, according to the argument of the appellant's counsel, could not become surety for her husband, and consequently, not having pledged her separate estate, cannot be made liable upon her single bill.  Sophia Fitzhugh is shown to be practically insolvent by the proof contained in this cause,— made insolvent by these very lawsuits,—and totally unable to satisfy the heavy judgments against her, "with which the docket of the Circuit Court of Frederick County groans" to this day.  Certified copies of these judgments are found in the records.

But whilst the objections made by the appellant's counsel are thus seen to be in themselves untenable, it is apparent that the question of jurisdiction does not properly arise in this case.  The right of the appellee to intervene does not rest upon the fact of the insolvency of the makers of the single bill, or of the want of an adequate remedy at law.  The proceeding is one instituted in a Court of Equity by the appellant himself, having for its object the sale and distribution of the proceeds of certain personal property, according to the legal and equitable priorities of parties claiming an interest therein.  One of those parties is the appellee; he intervenes for his protection, under a mortgage, as he alleges, for his own indemnity, and creating an implied lien superior to that of the appellant, in his favor, upon the personal property mortgaged.  If he had waited until the result of a suit at law could be ascertained, the proceeds of the property would in the meantime have been awarded to Col. Kunkel, and the appellee would have then, when too late, found himself remediless both at law and in equity.

It is also argued that the acceptance by the wife and mother of P. Fitzhugh of the indemnity mortgage of 9th October 1856, is an implied rescission of that of 11th July

1855.   To this it is a conclusive answer, that the mortgage of 9th October 1856, does not recite that Mrs. Sophia Fitzhugh aud Mrs. S. M. Fitzhugh, or either of them, had united with P. Fitzhugh in mortgaging away to the Bank, as his, all the property included in the July mortgage.   The property upon which these ladies are recited to have postponed their lien in favor of the Farmers and Mechanics Bank, is not the property whose proceeds are now in Court, but the real estate at Catoctin Furnace, the controversy in reference to which has been already argued and decided by this Court.

GOLDSBOROUGH, J., delivered the opinion of this Court.

The order ratifying the account stated in this case, must be affirmed.   The claim to the allowance of which, the appellant objects, is made by Montgomery Johns, surviving executor of John Johns, on a single bill for $4,000, executed to his testator on the 11th of July 1855, by Peregrine Fitzhugh, with Sarah, his wife, and Sophia Fitzhugh as joint makers and sureties.

The record shows, that Peregrine Fitzhugh, to secure the payment of this obligation, and his sureties from loss on account of the liability thus contracted, executed a mortgage to Sophia Fitzhugh upon six horses, forty mules, six wagons, and the harness and gearing belonging thereto, which were then used by him in his business at the Catoctin Iron Works, of which he was proprietor. Afterwards, on the 25th of Nov., 1856, Fitzhugh, having agreed with the appellant to form a co-partnership for manufacturing iron, sold, and with his wife and Sophia Fitzhugh, conveyed to him an undivided moiety of the property, real and personal, known as the Catoctin Iron Works; the appellant retaining in his own hands, in accordance with the terms of his purchase, $10,000 of the purchase money, to satisfy what was then ascertained and assumed to be his proportion of the liens then existing on the

property. The dissolution of this co-partnership occurred on the 21st of April, 1858, when Fitzhugh entered into another engagement with the appellant for the exclusive possession of the joint property, and payment of the co-partnership debts. To secure the performance of this last agreement, he executed a mortgage of the co-partnership property to the appellant, and failing to comply with the conditions stipulated, the appellant then filed his bill for a sale of the mortgaged property, including that covered by the mortgage to Sophia Fitzhugh; upon which sale was made, and the proceeds of the property, covered by the last mentioned mortgage, separately reported for distribution. At that stage of the case, Montgomery Johns, as surviving executor of John Johns, and holder of the single bill for $4,000, intervened by petition, praying that he might be substituted to the rights of Sophia Fitzhugh, and have payment of his claim out of the proceeds of the property mortgaged to her.

The only material question arising on these facts, is in regard to the right of substitution claimed by Montgomery Johns, which is resisted by the appellant on several grounds. We have, however, concluded, after a careful examination of the appellant's printed argument, and of the evidence on which he founds his objections, that they are not well taken.

The fund in question was brought into a Court of Equity, upon a proceeding properly instituted by himself, and he is not now at liberty to dispute the jurisdiction of the Court over the subject matter of the proceeding, nor its power to make distribution according to the equitable rights and priorities of all the parties interested. Even on the theory that the creditor, whose claim is resisted, had a remedy at law which he was bound to exhaust before he could proceed in equity, yet that rule does not apply, when the subject matter of his ultimate equitable remedy is brought into a Court of Equity for adjudication

on a proceeding properly instituted by other parties; for jurisdiction in equity, having once attached, it will be maintained for the protection and final adjudication of all the rights and interests involved.

The mortgage to Sophia Fitzhugh was a security for the payment of the single bill referred to in, and filed with the petition of Montgomery Johns; and the simple question is, whether he is entitled to the benefit of that security under the circumstances shown in this case. On that point we have no doubt. The general rule governing in such cases, is well ascertained and defined in the authorities upon this subject. In 1*st Story's Eq. Jur.*, sec. 638, it is stated to be, "that if a principal has given any security or other pledges to his surety, the creditor is entitled to all the benefit of such securities or pledges in the hands of the surety, to be applied in payment of his debt;" and, again, in sec. 639, that "the surety has the right to call on the creditor to do the most he can for his benefit; and if he will not, a Court of Equity will compel him." The case of *Eastman vs. Foster*, 8 *Met.*, 19, is very full on this point. There, it was held that a mortgage, given by the maker of a promissory note to the surety upon it, for the purpose of securing payment of the note, and saving the surety from loss, created a trust and an equitable lien for the holder of the note; that the mortgagee held the property subject to such trust; and further, that the trust would follow the property into the hands of the original mortgagor if released to him before payment of the note, or into the hands of any grantee of the mortgagor, who should take it with actual notice of the trust, even though the holder's right of action should be barred by the statute of limitations. On these authorities the fact that the principal and his sureties joined in a conveyance to the appellant of an undivided moiety of the property mortgaged to one of the sureties, would seem to have no effect upon the equitable right of the creditor to

73. v. 22.

Kunkel *vs.* Fitzhugh et al.

the full benefit of the mortgage, and the more especially as the appellant appears, from the evidence, not only to have accepted the conveyance with full knowledge of the mortgage, but was allowed to retain in his own hands a sufficient sum of the purchase money to protect his share or interest in the property from the creditor's equitable claim to the benefit of the mortgage to the surety.

We have discovered no reason for disturbing the account allowing the claim of Johns, and therefore affirm the order of the Court below, with costs to the appellee.

*Order affirmed.*

(Decided March 15th 1865.)