WILLIAM A. BOYD *vs.* OLIVER A. PARKER and JOHN C. H. BOSTON, trading as E. L. PARKER & Co.

*Identity of Mortgage Notes—Question whether a Mortgage was a Security for the payment of certain notes or only an Indemnity to the Endorser—Effect of release of a Mortgage as against the holder of the mortgage Debt. Extent of notice given by the recording of a Mortgage—Misrepresentations—The absence from a Mortgage of the Names of the Holders of the notes, intended to be Secured thereby, does not affect the validity of the mortgage—Laches—Secret motive. Purchaser cannot set up as a subsisting lien Prior mortgages which have been paid by him, and released.*

On a bill to foreclose a mortgage the promissory notes claimed to be secured by the mortgage, corresponded in all respects with those described in the mortgage, except that they were not stamped, while those mentioned in the mortgage are described as "*being duly stamped*," and the testimony showing the circumstances attending the execution and delivery of the notes and mortgage proved conclusively that they were the same held and claimed by the complainants. HELD:

That the notes were sufficiently identified.

A mortgage made by K. of leasehold property in the City of Baltimore, contained the following recitals: "Whereas W. has this day endorsed three promissory notes all of even date herewith, drawn by the said K. each for the sum of," &c.; "and whereas it was a condition precedent, and which condition has induced the said W. to endorse the three promissory notes aforesaid, that the said K. shall make and execute unto her a mortgage upon his dwelling house and premises hereinafter described, to secure her from any and all loss she may sustain by the non-payment by the said K. or any one in his behalf of the said promissory notes' or any of them upon their maturity respectively." And contained the proviso that, "if the said K. his executors, administrators or assigns shall pay, or cause to be paid, the

Boyd *vs.* Parker & Co.

three promissory notes at their maturity respectively *to the holder or holders of them*, or in case the said W. her executors, &c.; shall be compelled to pay the said notes or any of them, and the said K. his executors, &c.; shall pay or cause to be paid to the said W. her executors, &c the amount, she, or they may have been compelled to pay, &c.; and shall perform the covenants herein contained, &c.; then this mortgage shall be void and of no effect." The mortgage also contained an assent to a sale in the usual form, and providing that in the event of a sale, the proceeds should "be applied to the payment of all claims *of the said mortgagee*, her representatives or assigns under this mortgage, whether the same shall have matured or not." The covenant to keep the mortgaged premises insured required the policy of insurance to be so framed or endorsed "as that in case of loss by fire the avails thereof shall inure *to the benefit of said mortgagee* to the extent of her lien or claim under this mortgage." On a bill for the foreclosure of this mortgage filed by the holder of the mortgage notes, against the mortgagor and mortgagee, and a subsequent purchaser of the mortgaged premises, it was HELD :

1st. That the mortgage was a security for the payment of the notes as well as an indemnity to W. the endorser.

2nd. That the mortgage inured to the benefit of any one into whose hands the notes might be, provided he was a *bona fide* holder of them.

3rd. That as a consequence it was not in the power of W. to release the same so as to deprive the holders of the notes of the benefit of their security under the mortgage.

4th. That the mortgage having been duly recorded was notice to the purchaser of the mortgaged premises, of the existence of the promissory notes which it was intended to secure, as well as of its legal import and effect.

5th. That any misrepresentations by K. to the purchaser would give the latter no claim for equitable relief, the complainants having had no agency in misleading him.

6th. That it was no objection to the validity of the mortgage, that the names of the holders of the notes were not mentioned therein.

7th. That the purchaser could not be said to have been entirely without laches in relying upon K's statements, without making further inquiry to ascertain whether the notes were still in existence or whether they had been paid.

It being conceded that the motive which induced the complainants to take the mortgage to the endorsee instead of directly to themselves was to avoid the danger of its being assailed as an illegal preference under the Bankrupt law, in case K. should be forced into bankruptcy, it was HELD :

That this fact could have no significance or effect upon the rights of the parties in this suit.

When the purchaser purchased the property two pre-existing mortgages were released to K. from whom he derived the title, and at the same time the mortgage now in question was also released to K by W. It turned out that the release of W. was not effectual because the notes which the mortgage was intended to secure, were outstanding in the hands of the complainants who were entitled to enforce it against the property. HELD:

1st. That the purchaser could not set up the prior mortgages as subsisting liens.

2nd. That the fact that the prior incumbrances were paid out of the purchase money could not take the case out of the rule, that the payment of an incumbrance by one whose duty is to pay, extinguishes it, and that if a purchaser desires to keep a previous incumbrance alive he should do so by taking an assignment.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by the appellees against the appellant and others for the foreclosure of the following mortgage, which was properly executed:

"This mortgage made this 31st of May, in the year 1869, by Matthew W. Kilgore, of the City of Baltimore in the State of Maryland.

"Whereas, Margaret A. Warner, of the City of Baltimore aforesaid, has this day endorsed three promissory notes all of even date herewith, drawn by the said Matthew W. Kilgore, each note for the sum of five hundred and seventy-five dollars and fifty cents, and interest payable in seven, thirteen and nineteen months respectively after date, and duly stamped, the said notes in the aggregate amount to the sum of one thousand seven hundred and twenty-six dollars and fifty cents.

"And whereas, it was a condition precedent, and which condition has induced the said Margaret A. Warner to endorse the three promissory notes aforesaid, that the said Matthew W. Kilgore shall make and execute unto her a mortgage upon his dwelling house and premises hereinafter

described, to secure her from any and all loss she may sustain by the non-payment by the said Matthew W. Kilgore, or any one in his behalf, of the said promissory notes, or any of them upon their maturity, respectively. And whereas, it is the desire of the parties to these presents, that such agreement shall be carried out in good faith in every particular :

"Now this mortgage witnesseth, that in consideration of the premises, and of one dollar, the said Matthew W. Kilgore, doth grant and assign unto the said Margaret A. Warner, her executors, administrators and assigns, all that lot or parcel of ground situate in the City of Baltimore aforesaid, and described as follows, that is to say : ` * * * * * * * *

"To have and to hold, the said described property, with the rights and appurtenances aforesaid, unto the said Margaret A. Warner, her executors, administrators and assigns, during all the residue of the term of years yet to come, and unexpired therein, with the right and benefit of renewal of said term forever, subject to the payment of the yearly rent of fifty-one dollars, payable in equal half-yearly instalments on the first day of January and July, in each year respectively ; provided, that if the said Matthew W. Kilgore, his executors, administrators or assigns, shall pay or cause to be paid the three promissory notes aforesaid, at their maturity, respectively, to the holder or holders of them, or in case the said Margaret A. Warner, her executors, administrators or assigns, shall be compelled to pay the said notes or any of them, and the said Matthew W. Kilgore, his executors, administrators and assigns, shall pay or cause to be paid to the said Margaret A. Warner, her executors, administrators and assigns, the amount she or they may have been compelled to pay, so that it shall not exceed the sum of $1,726.50 and interest, and shall perform the covenants herein contained on his and their part to be performed, then this mortgage shall be

void and of no effect.   And the said Matthew W. Kilgore doth hereby declare his assent to the passing of a decree by the Circuit Court of Baltimore City, or any other Court of competent jurisdiction, for a sale of the property hereby mortgaged, to take place at any time after default shall have been made in payment of the mortgage debt aforesaid, or any part thereof, or of the interest thereon, whether the time limited for the payment of the whole debt shall have expired or not, pursuant to the provisions of the Maryland Code of Public Local Laws, Article IV, section 782, &c., relating to mortgages in the City of Baltimore, and in the event of a sale under such decree, the proceeds thereof shall be applied to the payment of all claims of the said mortgagee, her representatives or assigns under this mortgage, whether the same shall have matured or not.   And it is agreed between the said parties, that until default be made in the premises, the said mortgagor shall hold and possess the hereby mortgaged property, and receive the rents and profits thereof, upon paying, in the meantime, the ground-rent and all taxes thereon, and also the mortgage tax on the debt hereby secured, which ground-rent, taxes, mortgage debt and interest, the said mortgagor for himself, his heirs, executors, administrators and assigns, hereby covenants to pay when legally demandable.   And also during the continuance of this mortgage, to keep the improvements on the said mortgaged premises named, against damage or loss by fire, to the amount of at least one thousand seven hundred and twenty-six $\frac{50}{100}$ dollars, and to cause the policy of such insurance to be so framed or endorsed, as that in case of loss by fire, the avails thereof, shall inure to the benefit of said mortgagee to the extent of her lien or claim under this mortgage.''

The bill stated : '' That on the 31st of May, 1869, a certain Matthew W. Kilgore, then of the City of Baltimore, but now residing in Baltimore County, being indebted to your orators in a large sum of money for goods

sold and delivered, made and executed his three several promissory notes for $575.50 each, payable respectively in seven, thirteen and nineteen months after date, to the order of Margaret A. Warner, now of Baltimore County ; that the said Margaret A. Warner, on the same day, endorsed the said notes to your orators, and on the same day the said Kilgore executed to the said M. A. Warner, a mortgage upon certain property in the City of Baltimore, to secure the payment of said notes to whomsoever might be the holder thereof, and to indemnify her from loss by reason of the endorsement thereof. All of which will appear by a duly certified copy of said mortgage, to be hereafter filed ; that the said notes were duly protested for non-payment, and are still held by your orators—as will appear by said notes and the protests thereof, herewith filed as Exhibits E. L. P. & Co., Nos. 1, 2 and 3.''

'' Your orators further shew, that the said Matthew W. Kilgore did, on the 30th of June, 1870, sell and convey the said mortgage property to William A. Boyd, of said City of Baltimore ; and your orators are advised that they are entitled, as holders of said notes, to the benefit of the security afforded by the said mortgage, but that they can only obtain the same by the aid of this Honorable Court.''

There was a prayer for a sale of the mortgaged premises and for subpœna, against Matthew W. Kilgore, Margaret A. Warner and William A. Boyd.

The separate answer of William A. Boyd, states, '' That he is ignorant of the fact charged in said bill, that the said Matthew W. Kilgore, one of the defendants, being indebted to the complainants in a large sum of money, for goods sold and delivered, made and executed his three several promissory notes for $575.50 each, payable respectively in seven, thirteen and nineteen months after date, to the order of Margaret A. Warner, and that the said Margaret A. Warner, the same day, endorsed the said

notes to the complainants, and requires proof of such indebtedness, and of the making, execution and endorsement of said notes.''

"This defendant denies, as is alleged in said bill, that the said Kilgore executed to the said Margaret A. Warner, a mortgage upon certain property in the City of Baltimore, which was afterwards conveyed by said Kilgore to this defendant, to secure the payment of the said notes to whomsoever might be the holders of the same, and to indemnify her against loss by reason of endorsement, but, on the contrary, avers that the said mortgage was expressed to be for the purpose of indemnifying her against loss by reason of the endorsement of certain promissory notes mentioned in said mortgage, and for no other purpose, but that it does not appear from said mortgage that the notes therein mentioned had been endorsed to any one, or had even been passed out of the possession of the said Kilgore and Warner—as will appear by reference to the copy of said mortgage filed in this case. This defendant denies that the notes mentioned in the bill of complaint, and filed therewith, are the notes mentioned in the mortgage of said Kilgore.

"This defendant admits that on the 30th of June, 1870, he purchased from the said Kilgore, the leasehold lot of ground on Eden Street, which is described in the said mortgage from Kilgore to Warner, but he charges and avers, that at the time he made said purchase, the said property was free from all incumbrances, and especially the said mortgage from Kilgore to Warner, had been released by the mortgagee therein named, in the form and manner provided by the Code of Public General Laws of Maryland, for releasing mortgages—as will appear by reference to the copy of said mortgage filed in this case.

"This defendant avers, that on or about the 30th of June, 1870, he agreed to purchase from said Kilgore through said Kilgore's agent, a certain Samuel H. Hooper, (this defendant having no acquaintance with the said Kil-

gore,) the property mentioned, for the sum of three thousand one hundred dollars cash, said property to be free from all incumbrances; that this defendant employed counsel to examine the title to said property, and that his said counsel reported to him that there were several mortgages and a judgment, existing liens thereon, viz: a mortgage to David W. Caskey, dated the 30th of October, 1867, for the sum of twenty-two hundred dollars, which had been subsequently assigned by the said Caskey to a certain Robert D. Berry, a mortgage to the Steuben Building Association, dated 30th of October, 1867, and * * * the mortgage to Margaret A. Warner above mentioned; and a judgment in the Court of Common Pleas of Baltimore City, in favor of Frother, for the sum of nine hundred dollars; that the said Kilgore was informed by this defendant's counsel, that the property would have to be relieved of the incumbrances aforesaid, before a deed would be accepted by this defendant and the purchase money paid, when the said Kilgore proposed that this defendant should clear the said property of its incumbrances with the said thirty-one hundred dollars, the purchase money aforesaid, that the defendant accordingly paid off the mortgage of Berry, and obtained from him a release of the same, paid off what was due on the mortgage of the Steuben Building Association, and obtained a release from said Association, and in consideration of the payment of the sum of three hundred dollars, obtained a release of the property in question from the lien of the said judgment in the Court of Common Pleas.

"This defendant charges that he had no notice of any indebtedness from the said Kilgore to the complainants, nor any notice whatever that the complainants were or claimed to be the holders of the notes mentioned in said mortgage, but, on the contrary, avers that careful inquiry was made by the counsel employed by him to examine the title of said property, from every one likely to have any

knowledge in reference to the matter, and that his said counsel were informed that the notes mentioned in the said mortgage had never been made and executed, and that the said mortgage was designed to secure a debt due by said Kilgore to the said Margaret A. Warner, and this defendant now believes and charges, that if the notes filed with the bill in this case, are the ones mentioned in the mortgage, the names of the complainants as the holders thereof were purposely omitted from the said mortgage for the purpose of concealing the fact that they were the holders thereof, and were purposely withheld and concealed from this defendant by reason of a previous agreement and understanding to that effect between the said Kilgore and the complainants.

"This defendant further charges, that he is informed that this Honorable Court has no jurisdiction to pass a decree for the sale of said property, upon the bill of complaint filed by the complainants in this case. This defendant therefore prays the Court to be hence dismissed with his costs in this behalf so unjustly sustained, &c."

Testimony was taken under a commission, the effect of which is sufficiently stated in the opinion of this Court.

The Court below (BROWN, C. J. and PINKNEY, J. concurring,) passed a decree in favor of the complainants from which the defendant Boyd appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*Thomas S. Baer* and *Charles Marshall*, for the appellant.

The appellees have not, by sufficient evidence, shown themselves to be the holders of the notes mentioned in the mortgage. It must be remembered that it is not mentiond in the mortgage that the notes had been passed to the appellees, or even that they had been to any one, but that the appellees claim the benefit of said mortgage,

because they are the holders of certain notes, which, they say, are the notes mentioned therein, and they rely upon the correspondence in date, amount, &c., between their notes' and those mentioned in the mortgage, and upon the testimony of Parker and Poe, to establish their claim.

The claim of the appellees is based upon the general doctrine 'that, if a " principal has given any securities or other pledges to his surety, the creditor is entitled to all the benefit of such securities or pledges, in the hands of the surety, to be applied in payment of his debt." 1 *Story's Eq. Jur., sec.* 638.

In reference to this doctrine, applied to a contract of personal indemnity merely between the debtor and surety, the creditor has no independent rights under it, which arise at its making, and it follows from this, necessarily that he can claim no higher or greater right than the surety, that he is bound by the terms of the contract, which the surety, through whom he claims, has made with the debtor, and by any subsequent acts of the surety, which may have affected either the contract or the pledge ; that the surety may voluntarily return the security to the debtor ; that he may release it to a third party ; and that he may transfer it for a valuable consideration. Claiming through the surety, the legal status of the creditor must be that of the surety, as it exists at the time the claim is set up. *Osborn vs. Noble*, 46 *Miss.*, 449 ; *Bank of Va. vs. Boisseau*, 12 *Leigh*, 387 ; *Hopewell vs. Bank of Cumberland*, 10 *Leigh*, 221, 222 ; *Ohio Life & Trust Co. vs. Reeder*, 18 *Ohio*, 46-47 ; *Homer vs. Savings Bank*, 7 *Conn.*, 478 ; *Thrall vs. Spencer*, 16 *Conn.*, 139 ; *Jones vs. Quinnipiack Bank*, 29 *Conn.*, 25 ; *Bibb vs. Martin*, 14 *Smedes & M.*, 87-92 ; *Woodville vs. Reed*, 26 *Md.*, 191 ; *St. Louis Build. & Sav. Asso. vs. Clark*, 36 *Missouri*, 601.

There is a class of cases where the rights of the creditors have been apparently placed on broader grounds, and even maintained against adverse action of the surety, but,

in such cases, there have always been some provisions in the contract, which rendered it more than one of personal indemnity to the surety, and made the property pledged liable for the payment of the debt. Such a contract is construed to create a trust; the surety becomes a trustee, and holds the property placed in his hands, for the creditor, who is the *cestui que trust*. The latter can enforce his equitable lien, and the trustee can not deprive him of it. In such cases he claims in his own right, as *cestui que trust*, under the terms of contract. This distinction reconciles all the cases. See cases previously cited, and— *Kunkel vs. Fitzhugh*, 22 *Md.*, 567.

The mortgage in this case, is, by its terms, one of personal indemnity only, and the surety having released it, the appellant took the property, free from any lien or claim of the appellees.

The *recital*, the object of which is to state the inducement for the execution of a paper, specifies that it is for the indemnity of the surety alone.

The conditions in the mortgage state that it is to be void upon the happening of either one of two conditions, the payment of the notes, or the re-payment of the amount, the surety may be compelled to pay; it may, therefore, by its terms become void, and yet the notes not be paid. For, if the mortgagee is never compelled to pay anything, by reason of her endorsement, which might readily happen, as by the failure of the holders of the notes to bind her by demand and notice, the mortgage is void, under the alternative conditions without the notes being paid. Can a mortgage be construed, as creating a trust for the payment of a debt, when, by one of its alternative conditions, it may become void, without the debt being paid?

The mortgagor gives his assent to the passing of an *ex parte* decree, for the sale of the property, should default be made in the payment of the mortgage debt, &c., and it is provided, that in the "event of a sale under such decree,

the proceeds thereof shall be applied to the payment of *all
claims of the said mortgagee, her representatives or assigns,*
under this mortgage, whether the same shall have matured
or not," still looking to her indemnity alone.    The Court
is now asked to construe this mortgage, to be a trust for
the payment of the debt of the appellees, when, by the
terms of the instrument, if the trustee makes a sale, the
proceeds thereof are to be applied, not to the payment of
the debt, but to any claims which she, the mortgagee,
may have under the mortgage.

The case of *Kunkel vs. Fitzhugh,* 22 *Md.,* is a far differ-
ent one from this.    The recital in both seems to be almost
identical, but the condition of the former is the single one
of paying the note.    There is not the important provi-
sion in reference to the disposition of the proceeds of sale,
or of insurance; nothing but the recital and the simple
condition.    It can readily be conceived that the Court
might construe such a mortgage to create a trust.    As the
mortgage was to remain in effect until the note was paid,
it must be meant to provide for its payment.    But in this
case, the alternative condition, and the agreement as to
the distribution of the proceeds of sale, and insurance,
clearly show that payment of the notes was not intended,
except as it might be necessary for the purpose of indem-
nity.    *Vide,* 42 *Miss.,* 54.

Where a mortgage is made to secure an endorser, the
creditor cannot claim the benefit of it till the endorser's
liability is fixed; and if the latter is discharged by his
laches, he loses all title to the property.    This is the
necessary consequence of the doctrine of substitution.    If
the surety is not liable, and therefore has no claim, then
there is nothing to which the creditor can be substituted.
The mortgage is absolutely void.  1 *Hilliard an Mort-
gages, (Ed.* 1864,) 352; *Tilford vs. James,* 7 *B. Monroe,*
336.

13                    v. 43.

The appellant is in equity, entitled to the rights of the former owners of the two prior mortgages, which were paid for by him, under the circumstances narrated in the evidence, and the claim of the appellees must be postponed to these encumbrances.

Had the appellant procured the conveyance from Kilgore to himself, and subsequently received the release of the two prior mortgages, it was conceded that these instruments would have operated as assignments of the prior liens to him. The intent, that the title of the mortgagees was to be transferred to Boyd would have been indisputable, and this intent would have governed the construction to be given to the means of conveyance. *Walker vs. Stone,* 20 *Md.,* 198.

Surely, no difference exists between an intent to transfer to Boyd, and an intent to convey to Kilgore, in order that he might transfer to Boyd. In the one case, the conveyance is direct, in the other, a third party acts as a conduit ; in both, the conveyances are made, that Boyd may receive the legal title. In the earlier precedents, there was some conflict on this point, and it was thought that the seizing of the person who serves as a conduit, must not be beneficial. In Maryland, however, the equity of the question has won a victory, and it is now firmly settled, that even the favored claim of dower yields to that of the party who extinguishes a lien, in order to obtain for himself the lienor's title. *Ahern vs. White,* 39 *Md.,* 419-421; *Rawlings vs. Lowndes,* 34 *Md.,* 639.

Any other holding would conflict with long established principles.

If the operation of the mortgage to Mrs. Warner was to raise a trust for the appellees, the appellant is to be discharged for want of notice of their claim. The law on this subject is, that a purchaser must use all reasonable means of inquiry, and pursue such avenues of informa-

tion as are accessible. *Price vs. McDonald,* 1 *Md.,* 416, 417.

The mortgage informed the appellant that there was a trust in favor of some parties unknown, *if* Kilgore had passed the accommodation notes, which it mentioned, to any one. The appellant applied both to Kilgore and the lawyer who drew the mortgage, and was induced to believe, by what they said, that no notes were outstanding. All of the circumstances combined to make him rely on Kilgore's representations. As the notes were expressed to be accommodation notes, and not to be passed off by Mrs. Warner, he could not learn the names of the holders from her. She, moreover, had entrusted her release to Kilgore, thus contributing to increase his credit, and the appellees, by failing to prefer any claim on the first note, which had been overdue six months, and carefully omitting their names from the mortgage, as the holders of the notes, confirmed the statements of Kilgore and Mr. Higgins.

*John S. Wirt* and *John P. Poe,* for the appellees.

The mortgage from Kilgore to Mrs. Warner was not a mere indemnity to her to secure her against loss by reason of her endorsement of the notes therein referred to, which indemnity she could hold or surrender at her pleasure, but it must be regarded as a security for the notes themselves, which she had no power to release without the consent of the appellees, the holders of the notes.

That this is the true operation and effect of the mortgage is apparent upon a consideration of the conditions upon which it was to be void—from its covenants—and its special agreement for a sale in case of default, and for insurance upon the premises against loss by fire—and indeed from its whole scope and tenor. *Clarke vs. Levering,* 1 *Md. Ch. Dec.,* 178 ; *Ohio Life Ins. and Trust Co. vs. Winn & Ross,* 2 *Md. Ch. Dec.,* 37 ; *Byles vs. Tome,* 39 *Md.,* 461.

But even if the mortgage can fairly be regarded simply as an indemnity to Mrs. Warner, it would still operate to secure the notes held by the appellees, and could not therefore be validly released by her without their consent. This precise question is *res adjudicata* in Maryland. *Kunkel vs. Fitzhugh*, 22 *Md* , 567, and cases there cited.

The same principle was subsequently affirmed in *Owens vs. Miller & Mayhew*, 29 *Md.*, 144. The case of *Eastman vs. Foster*, 8 *Met.*, 19, adopted in *Kunkel vs. Fitzhugh*, is an express decision to the same effect.

The appellant had both actual and constructive notice of the mortgage and of its provisions, and of course must be bound by its true legal operation and effect. It was duly executed, acknowledged and recorded, which of themselves were sufficient notice. Moreover the counsel for the appellant discovered it whilst searching the title, and reported its existence to the appellant—and then without seeking the mortgagee and getting information direct from her, contented himself with the simple statements of Kilgore, in flat contradiction as these were with the plain and express recitals of the mortgage. As might have been expected these statements proved untrue, and this controversy is the result.

Had he gone to Mrs. Warner, he would, no doubt, have ascertained the exact facts from her, and without the production, delivery and cancellation of the notes, would, *perhaps,* have declined to accept her release of the mortgage, suspiciously executed as that was on the 28th of February, 1870, four months previously. *Price vs. McDonald*, 1 *Md.*, 416.

The facts seem to show that the release of the mortgage was accepted, because as matter of law, it was supposed to be sufficient, and not because it was believed that there were no such notes outstanding as the mortgage recited.

If however, the true view be that the mortgage was a valid security for the notes in whosesoever hands they might

be, the instrument purporting to be a release of said mortgage was void against the appellees as the holders of said notes, and they are accordingly entitled to their lien, as if said release had never been executed.

The prior mortgages and incumbrances, when once paid, were extinguished and released, and their lien was absolutely gone. The parties did not intend that the lien of these encumbrances should continue to be kept alive, but that it should be absolutely extinguished.

To hold now that these liens still exist, would be to defeat the intent of the parties manifested in the most clear, apt and unequivocal manner. It is wholly immaterial that they were paid off out of the purchase money—for they were not released to the appellant, but to Kilgore. If it had been the desire or the design of the parties to keep them alive, they should have been assigned to the appellant and not released to Kilgore. This precise question has been several times decided in Maryland. See *Clabaugh vs. Byerly,* 7 *Gill,* 354 ; *Woollen vs. Hillen,* 9 *Gill,* 185 : *Alderson vs. Day,* 6 *Md.,* 52 ; *Swan vs. Patterson,* 7 *Md.,* 164 ; *Walker vs. Stone,* 20 *Md.,* 198 ; *Brawner vs. Watkins,* 28 *Md.,* 226 ; *Virginia vs. Ches. & Ohio Canal Co.,* 32 *Md.,* 545.

Upon the whole case it is submitted that the complainants, as holders of the notes recited in the mortgage to Mrs. Warner, are entitled to the benefit of the security given by Kilgore, the principal debtor, to her as the surety. That they are entitled to this security, notwithstanding their names are not mentioned in the mortgage. That the surety could not release the mortgage to the prejudice, and without the consent, of the appellees, and that they are not to be deprived of the benefit of the mortgage upon the ground that the purchase money was in part applied to the payment of the prior liens, inasmuch as these were expressly and formally released and extinguished.

BARTOL, C. J., delivered the opinion of the Court.

The questions presented by this appeal, are

1st. Whether the promissory notes held by the appellees, and exhibited with the bill of complaint are the same notes as are mentioned in Kilgore's mortgage of May 31st, 1869?

2nd. Whether the mortgage according to its true construction and effect, was a mere indemnity to Mrs. Warner to secure her against loss, by reason of her endorsement, or was a security for the payment of the notes themselves to the holders thereof?

3rd. Whether if the latter be its true construction, the appellant is entitled, as a *bona fide* purchaser without notice; or on any other equitable ground, to be protected against its enforcement?

4th. If it be held that the mortgage can be enforced against the property, is the appellant entitled to have abated therefrom, the amounts paid by him in satisfaction of the prior liens which rested upon the property, when the mortgage was executed?

1st. We have no doubt of the identity of the notes described in the mortgage, with those held by the appellees and exhibited with the bill of complaint. The only variance between them, pointed out by the appellant's counsel consists in their not being stamped, while the notes mentioned in the mortgage are described as, "being duly stamped." In all other respects, they correspond; being all drawn by Kilgore, and endorsed by Margaret Warner. The date, amounts, and times when they are payable respectively are the same as described in the mortgage. In addition to this, the testimony in the cause, showing the circumstances attending the execution and delivery of the notes and mortgage, prove conclusively that they are the same notes now held and claimed by the appellees.

2nd. After the most careful examination of the terms of the mortgage, we can give no other construction to it than

that it is a security for the payment of the notes, as well
as an indemnity to Mrs. Warner the endorser.   It is not to
be distinguished from the mortgage which was before this
Court in *Kunkel vs. Fitzhugh*, 22 *Md.*, 567.   For though
the instruments are not in the same words, they are sub-
stantially the same, and so far as this question is con-
cerned must be construed as having the same operation
and effect.   The mortgage being held by Mrs Warner,
not only for her own indemnity, but as a security for the
payment of the notes, inures to the benefit of any one into
whose hands the notes may be, provided he is a *bona fide*
holder of them; and as a consequence, it was not in the
power of Mrs. Warner to release the same, so as to deprive
the appellees, by whom the notes were held, of the benefit
of their security under the mortgage.

   This conclusion rests upon well settled principles which
have often been recognized in this State.   We may refer
to the decisions of the late Chancellor in *Clark vs. Lever-
ing*, 1 *Md. Ch. Dec.*, 178 ; *Ohio L. Ins. and T. Co. vs.
Winn & Ross*, 2 *Md. Ch. Dec.*, 26 ; to *Owens vs. Miller &
Mayhew*, 29 *Md.*, 145, and *Kunkel vs. Fitzhugh*, before
cited.

   The counsel for the appellant has contended that a
surety who has taken a mortgage for his own indemnity,
may assign or release the same, while solvent, and thus
defeat or prevent the creditor from claiming under it by
subrogation as a security for his debt; and therefore that
the release executed by Mrs. Warner, the mortgagee, is
valid, and operated to defeat the claim now set up by the
appellees, and for this they have cited *Woodville vs. Reed*,
26 *Md.*, 181.   If the general proposition were conceded ;
the consequence above stated would not follow ; because
the mortgage in this case is not merely one of indemnity
to the endorser, but is by its terms a security for the pay-
ment of the notes.   We do not understand however, the
case of *Woodville vs. Reed*, as having decided the general

proposition for which it has been cited. The particular mortgage which had there been assigned to J. D. Roman, (viz: that of May 13, 1856,) was not a mortgage of indemnity at all, but an absolute mortgage to H. Easton, to secure the payment of a debt of $15,000 due him from the mortgagor. The question as to the effect of an assignment by a surety of a mortgage of indemnity did not arise in the case, and was not decided · What was said by the Court on that subject, (page 191) was stated as the result of decisions in other States, which had been cited at the bar, and has been erroneously copied by the Reporter in his. head note, as part of the Court's decision.

There is nothing in the case of *Woodville vs. Reed,* in conflict with the decision in *Kunkel vs. Fitzhugh,* which is conclusive of the *second* question.

3rd. The mortgage having been duly recorded, was notice to the appellant of the existence of the promissory notes which it was intended to secure, as well as of its legal import and effect. It appears that he was either mistaken as to the construction and effect of the paper, or was misled by the statements of Kilgore, upon whose representations he relied. It is impossible for him to claim equitable relief· and protection on either ground. The appellees had no agency in misleading him; they are not responsible for the misrepresentations of Kilgore, and had no knowledge of the purchase by appellant, till after it had been completed. It is no objection to the validity of the mortgage that the names of the appellees, the holders of the notes, were not mentioned therein. The notes being negotiable might have been passed to any other persons, and under the terms of the mortgage it would have operated as a security for their payment, no matter in whose hands they may have gone. Besides, the appellant cannot be said to have been .entirely without laches, in relying upon Kilgore's statements, without making further inquiry to ascertain whether the notes were still in existence, or whether they had been paid.

It is conceded that the notice which induced the appellees to take the mortgage to the endorser, instead of directly to themselves, was to avoid the danger of its being assailed as an illegal preference under the Bankrupt law, in case Kilgore should be forced into bankruptcy. But this fact can have no significance or effect upon the rights of the parties in this suit: Kilgore has not applied for the benefit of the Bankrupt law. The mortgage, in its present form, is legal and valid under the laws of Maryland ; and this being so it cannot be impeached on the ground of a secret intention on the part of the appellees, to avoid the operation of the Bankrupt law. This never has had any application to the case; and as was said in *Horwitz vs. Ellinger*, 31 *Md.*, 504, "We are dealing with the act of the parties, and if that be such as the law authorizes and approves, the secret motives that prompted it are wholly immaterial."

The appellant is not entitled to claim exemption of the property, from the mortgage debt, on the ground of being a *bona fide* purchaser without notice ; nor upon any other equitable ground which has been suggested in the argument, or which we can discover.

4th. Upon the fourth question we confess we have had very great hesitation and embarrassment ; not on account of the legal propositions involved ; for these have been too firmly settled by the decided cases in Maryland, to be now called in question. Our hesitation has been caused by the hardship of the particular case; a consideration which it has been said sometimes leads the Courts to "depart from precedents and make shipwreck of legal principles." To these it is our duty to adhere, we have no right to depart from them to meet, what we may think, is the abstract justice of any particular cases. It certainly is a hardship upon the appellant, that the property purchased by him should not only be charged with the mortgage debt due to the appellees, to the extent of its value at the time the mort-

gage was executed, when it was subject to prior liens and encumbrances; but that the payment of those liens with the money of the appellant, should re-enforce the mortgage, and inure to the benefit of the appellees. But we cannot escape the conclusion, that such is the legal effect of the transaction, as disclosed by the record. When the appellant purchased the property, the pre-existing mortgages were released to Kilgore, from whom he derived the title, and at the same time the mortgage now in question was also released to Kilgore by Mrs. Warner. But it has turned out that the release of Mrs. Warner was not effectual; because the notes which the mortgage was intended to secure were outstanding in the hands of the appellees, who are now entitled to enforce it against the property.

The legal effect and operation of the payment and releases of the prior mortgages was to remove or extinguish them as liens. The appellant having been disappointed as to the validity and effect of Mrs. Warner's release; now seeks to set up the prior mortgages as subsisting liens. But this would be not only against the terms and legal effect of the deeds, but contrary to the manifest intention of the appellant himself, at the time of the transaction. As very correctly said in the opinion of the Court below: "There is no general rule better settled or more just in itself, than that parties who enter into contracts, and especially contracts in writing, must be governed by them as made, according to their true intent and meaning, and must submit to the legal consequences from them." "The principle is well settled that the payment of an encumbrance by one whose duty is to pay, extinguishes it, and that if a purchaser desires to keep a previous encumbrance alive he should do so, by taking an assignment."

These principles apply to the present case, the fact that the prior encumbrances were paid out of the purchase money, cannot take it out of the operation of the rule.

We think the question before us has been conclusively settled in this State by *Clabaugh vs. Byerly*, 7 *Gill*, 354 ; *Woolen vs. Hillen*, 9 *Gill*, 185 ; *Brawner vs. Watkins*, 28 *Md.*, 226 ; *Swan vs. Patterson*, 7 *Md.*, 164 ; *Walker vs. Stone*, 20 *Md.*, 195, 198 ; *Alderson vs. Day*, 6 *Md.*, 52, *and Virginia vs. C. & O. Canal Co.*, 32 *Md.*, 504.

From these decisions it follows that the appellant is not entitled to claim as assignee of the prior mortgages, or in any other way to hold them as subsisting liens upon the property. We concur entirely in the views expressed by the learned judges who decided this case in the Circuit Court, and the decree must therefore be affirmed and the cause remanded.

*Affirmed and remanded.*

(Decided 24th June, 1875.)

STEWART, J., dissented.