Mr. Justice Hagner,
after making the foregoing statement of the case, delivered the opinion of the court.
The evidence of Mrs. Barber is undoubtedly greatly in-conflict with the averments in her answer. It appears, as undisputed in the case, that the first one -thousand dollars paid by John A. Barber, on the decree, in September, 1879, was borrowed by him from his mother, and that he executed a deed of trust upon his other property to secure its repayment. As to that payment, therefore, there can be no question that it was made with the proper money of John A. Barber.
It is proved by Mrs. Barber, that the remaining sum of $1,780 was also obtained from her by John A. Barber. She testifies that for that sum she had no security from her son, and that she did not expect any when it was given to him ; that it had not been advanced in the nature of a loan ; that it had not been furnished upon any understanding, expressed or implied, that it should be appropriated, in whole or in part, to the purchase of the decree ; that she “ gave him the money to do as he pleased with it; ” that she “ gave him the money as a present to do as he pleased ; ” that she “ had been giving him money all her life, at least ever since the death of his father ; ” that “ there was no agreement between them for its repayment; ” that she “did not request or require him to devote any portion of it to any specific purpose ; ” that she had nothing, personally, to do with any of the steps which resulted in the assignment of the decree to herself ; ” “I did not,” she says, “ request it at all; my son gave it to me without any request; I did not ash him for .it.” *554 She also stated that it was her son who employed counsel to procure the assignment of the decree, and that she received from his hands the contract, which she signed with her solicitors, who had also been .the solicitors of her son in the previous history of the case.
The first question for our consideration is, was the decree satisfied by its payment, in full, to Totten, the assignee of Strong ?
The general principle is well settled, that the payment of an incumbrance by one whose duty it is to pay extinguishes it. So, payment made by one of several joint obligors works the satisfaction of a bond. Bowie vs. Carroll, 7 Gill, 34.
A judgment, upon its payment by one of the defendants, becomes functus officio. It perishes in fruition.
In this decree all the defendants were principals, and the duty to pay the whole of the debt devolved upon each, and a payment by either worked a satisfaction of the decree.
In Hinton vs. Odenheimer, 4 Jones, North Carolina Equity Reps., 407, a creditor brought suit against two persons constituting a partnership. They gave bail for their appearance, according to the law as it then stood; one of them afterwards left the State, and judgment was entered against both partners. The resident partner paid the debt, and the judgment was entered to his use. He then procured a judgment in the same case against the surety on the bail bond of his absconding partner, and issued an execution upon it. The surety filed a bill in equity to restrain the enforcement of the execution ; and the court granted the injunction. On appeal, the appellate court sustained the decree below and said : “There is no principle on which, after satisfaction of the judgment on the partnership debt by one of the partners sued, equity ought to extend or preserve the vitality of the legal security, under the guise of an assignment, so as to charge .the bail of the other partner. The contract of the defendant is with the creditor alone. After he is paid, he has no further interest in the matter.”
A statute of Maryland of 1763, chap. 23, sec. 8, which is in force in this District, provides : “ That where a judgment *555 has been recovered against the principal debtor and sureties, and the judgment has been satisfied by one surety, the creditor shall be compelled to assign the judgment to that surety, and such assignee shall be entitled unto and have in his own name the same execution against the principal debtor, by virtue of such assignment, as the creditor might have had.”
- This statute made a change in what was the common law of the subject before its passage, but it is to be remarked that it applies only to the cases where the payment is made by a surety, and on judgments, not decrees.
And it has been decided (Creager vs. Brengle, 5 Harr. & John., 234), that if the payment is made by the surety to an assignee of the judgment, such assignee has no authority to make a further assignment to the surety; since the act only contemplates payment by the surety to the Original creditor, and an assignment by him.
2nd. The same rule will apply if an attempt is made after the payment of a decree by one of the defendants to have it entered to the use of a third party for the benefit of the surety.
Such would not be the case where the payment is made bona fide by a third person for whose use the judgment is entered; and if Mrs. Barber had paid the $1,780 herself, on her own account, and with the distinct purpose of having the decree, to that extent, entered for her use, such an assignment would have given her a valid title to proceed upon the judgment. But we are satisfied, from an examination of the testimony in connection with all the facts, that this money, like the $1,000 first paid, was really lent or given by Mrs. Barber to her son then, to dispose of as he might see fit as his own property, and without any existing purpose on her part to have it secured to her by an assignment of the decree for her use. The entry, therefore, of the decree to the use of Mrs. Barber was, in our opinion, but-an attempt ■ on the part of John A. Barber to do, by indirection, under the cover of his mother’s name, that which he could not have done without such interposition.
3rd. There is a further point made in the case, on the part *556 of the complainant, arising out of the nature of the transaction which formed the basis of the decree in the case of Strong vs. Barber.
The matter in controversy in that case was an alleged breach of trust on the part of the defendants who, it is said, must therefore be regarded as joint tort-feasors.
The principle that there can be no contribution, at law, enforced by one tort-feasor against the other wrong-doers, is limited by the more modern authorities to cases where the transaction, out of which the judgment arises, involves moral turpitude.
The subject is discussed at length in the case of Bailey vs. Bussing, 28 Conn., 455. In that case contribution was allowed at law where the defendants, though technically tortfeasors, were only such because they were the owners of a stage coach, which was upset by the carelessness of the driver. The absence of any fraud, or moral wrong, exempted the case from the operation of the general rule.
And in Seltz vs. Unna, 6 Wallace, 336, it is said, “ equal contribution to discharge a joint liability is not inequitable even as between wrong-doers, although the law will not, in general, support an action to enforce it where the payments have been unequal.”
It appears in the history of the present case, that John A. Barber had filed a bill in equity, in July, 1879, against his co-defendants, and Herr, Strong and Totten, for contribution, but the bill was dismissed after the defendants had answered or demurred. Whether such a bill could have been sustained if filed after entire payment, is a matter with which we are not concerned. The proceeding by Mrs. Barber to enforce payment to her by execution upon the satisfied decree, for the reasons we have stated, is untenable.
4th. It was insisted upon the part of the defendants, in the argument, that Herr purchased from Dodge and Darneille with full knowledge of the existence of Strong’s decree, and' the nature of the transaction creating that liability, and that, as Dodge and Darneille could not be heard in a court of equity on an application to exonerate their property from *557 contribution to John A. Barber, neither could Herr be considered as standing in a better position than his grantors, or having any equity superior to theirs, and that Herr, therefore does not come into court with clean hands, and can obtain no relief here.
It is true that Herr must be considered as having purchased with perfect knowledge of Strong’s decree ; but it does not follow that that fact places him, to all intents, in the identical position of his grantors. As to the land he pm> chased he is, of course, in no better attitude, and whatever liabilities justly attached to that land at the time of his purchase remain chargeable against it now. But in the same way, whatever immunities can be considered as appertaining to it at the time, still equally surround it in Herr’s possession.
As John A. Barber, one of the joint tort-feasors and defendants under the decree, could not have enforced contribution under the decree out of the lands of Dodge and Darneille while in their possession, neither can he himself, nor another for his benefit, enforce it now when the land has passed into the possession of Herr.
A proprietor of land may have incurred liability by. his acts while proprietor; as, for example, by digging coal or minerals upon it in such wise as to endanger the safety of his neighbor’s property. The purchaser of the land, however, would not be held liable for such antecedent acts of his vendor, although any judgment rendered in respect to those acts, antedating the purchase, would remain binding upon the land in the hands of the purchaser.
So, where, as in a reported case, two fathers agreed to make advances upon a treaty of marriage between their children, one promising to convey a particular farm to the married couple, and the other to advance a sum of money to stock it. After the marriage, the latter paid the money according to his agreement, but the former refused to convey the farm, and sold it to a third person. That purchaser could not be held liable upon the unperformed contract 3 although, if the land had remained in the hands of the *558 father, the court might have decreed specifically that It should be conveyed according to the agreement.
Whatever liability was fixed and binding upon the land of Dodge and Darneille, when it was purchased by Herr, remained a charge upon it after Herr’s purchase but nothing more.
Much stress has been laid upon the alleged hardship of this case. It is but proper that courts should, at times, recall the response which their predecessors have made when this argument has been much pressed upon them as a reason for departing from fixed principles. This is well expressed in the case of Boyd vs. Parker, 43 Md., 201: “The consideration of the hardship of the particular case sometimes leads the court ‘ to depart from precedents and make shipwrecks of legal principles.’ To these it is our duty to adhere, and we have no right to depart from them to meet what we may think is the abstract justice of any particular case.”
The decree below is affirmed.