(Decided 21st January, 1876.)

JAMES McCRACKEN *vs.* THE GERMAN FIRE INSURANCE COMPANY, and others.

*Substituted note entitled to all the Equities which attached to the Original note—Breach of Trust.*

Three mortgages, each purporting to be given to secure the repayment of a certain sum of money therein alleged to have been loaned and advanced by the mortgagee, a Building Association, to the mortgagor, were duly executed. No money, however, was advanced by the mortgagee, but in lieu thereof it issued its promissory notes payable to the order of the mortgagor, which he consented to accept as money. One of the notes not being paid at maturity, was taken up and replaced by another, drawn payable to the order of the mortgagor and by him endorsed, and having written on the back thereof the words: "This note is secured by mortgage on house No. 141 N. Calvert. James McCracken, Sec'y." This note came into the hands of M. before maturity, and for valuable consideration. Afterwards the Association became embarrassed, and the German Fire Insurance Company being the holder of the notes of the Association to a large amount, entered into an arrangement to surrender the notes of the Association to the amount of the balance due upon the aforementioned mortgages, the Association releasing said mortgages, and the mortgagor executing at the same time a mortgage on the same property to the Insurance Company, to secure said amount. No inquiry was made at the time of this transaction by the Insurance Company, as to whether or not, any of the notes issued to the mortgagor, were still outstanding. The mortgaged property was sold under a decree for the payment of a first mortgage thereon, and there being a large balance in the hands of the trustee after paying said mortgage, and the costs and expenses of the sale, M. filed his bill claiming to have his note paid out

McCracken *vs.* German Fire Insurance Co., *et al.*

of said balance in preference to the claim of the Insurance Company under its aforesaid mortgage. HELD:

1st. That the complainant, as the holder of the note, and consequently of the debt secured by the mortgage, was in equity to be considered the real mortgagee, or as substituted to all the rights of indemnity secured by the mortgage upon the property.

2nd. That the release of the mortgage by the Association without the payment of the debt of the complainant, was a breach of trust, and did not destroy his lien on the property.

3rd That the Fire Insurance Company was not entitled to be considered as a *bona fide* and innocent holder of its mortgage, without any notice of the equity of the complainant.

4th. That the complainant was entitled to have his claim paid out of the fund arising from the sale of the mortgaged property.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case was filed by the appellant against the appellees. During the years 1871, 1872 and 1873, the appellee, Daniel Ratcliffe, executed to the appellee, The Liberty Perpetual Building Association, No. 3, three mortgages upon the house No. 141 North Calvert Street, Baltimore, for various sums, amounting in the aggregate to $6100. Each of said mortgages purported to be given for the purpose of securing the repayment of a certain sum of money therein alleged to have been loaned and advanced by said Association, to said Ratcliffe ; but in fact no money was advanced by the Association, Ratcliffe consenting to receive in lieu thereof, its promissory notes drawn payable to his order. One of the notes given was not paid at maturity, but was taken up and replaced by the note, payment of which is sought by the complainant. This note drawn to the order of Ratcliffe, and by him endorsed, and having written on the back thereof the words, "This note is secured by mortgage on house No. 141 N. Calvert. James McCracken,

McCracken *vs.* German Fire Insurance Co., *et al.*

Sec'y," came into the hands of the appellant before maturity, and for a valuable consideration.

Afterward, the Association became very much embarrassed, and The German Fire Insurance Company, one of the appellees, being the holder of the paper of the Association to a considerable amount, it was agreed between the Treasurer of the Association and the President of the Insurance Company and Ratcliffe, that the Insurance Company should surrender to the Association the notes of the latter, to the amount of the balance then due upon Ratcliffe's mortgages, to wit, $5400, and that the Association should thereupon release said Ratcliffe, and that he should simultaneously therewith execute to the Insurance Company a mortgage for said sum of $5400. This arrangement was carried into effect, the release and the new mortgage being both executed and recorded at the same time, and as part of one transaction. Ratcliffe took no part in the negotiation of the transaction; he simply signed the new mortgage. About six months before the above mentioned transaction, the Treasurer of the Association furnished the President of the Insurance Company with a list of the notes of the Association then outstanding, including the note in question ; but the President of the Insurance Company in his testimony, stated that he did not examine this statement in each particular—he only looked at the sum total—and that neither he nor any of the officers of the Company knew of the existence of the note in question. He admitted, however, that he made no inquiries as to whether any notes given to Ratcliffe instead of money, by the Association, were still outstanding at the time of the transaction referred to. The property, No. 141 North Calvert Street, was afterward sold under decree of the Circuit Court of Baltimore City, for the payment of a first mortgage thereon, and there being a large balance in the hands of the trustee after paying said mortgage, together with the costs and expenses of the sale, the appellant claimed to have his note paid out of said balance

in preference to the claim of the Insurance Company, under their aforesaid mortgage for $5400. The Circuit Court, (Pinkney, J.,) passed a decree, rejecting the claim of the complainant, dismissing his bill, and directing the auditor to state an account, irrespective of said claim. An account was stated in accordance with this decree, and was finally ratified and confirmed by the Court. From the foregoing decree and order of final ratification, the complainant appealed.

The cause was argued before Bartol, C. J., Stewart, Miller and Alvey, J.

*W. A. Hammond,* for the appellant.

The note, held by the appellant being merely a renewal of an original note given under one of the mortgages from Ratcliffe, is in reality the same debt evidenced by the note of which this is the renewal, and, as such, its *bona fide* holder is entitled to all the prtvileges and benefits which would have attended the original note. *Markell vs. Eichelberger,* 12 *Md.,* 78 ; *Chase vs. McDonald & Ridgely,* 7 *H. & J.,* 160 ; *Brinckerhoff vs. Lansing,* 4 *Johns. Ch. Rep.,* 65. Such was evidently the understanding of the parties at the time, as shown by the endorsement—"Secured by mortgage, &c.," placed on the back of the note by authority of the Association.

The original note represented in reality so much of the mortgage debt, because the money given for it, passed directly into the mortgagor's hands, and was really to that extent the actual consideration for which the mortgage was given. With these notes outstanding and unpaid, the Building Association was not the real lender of the money, but occupied the position of an accommodation maker of certain notes, with a mortgage of indemnity from the payee for whose benefit the notes were drawn. Under such circumstances, the mortgage would follow the principal

debt, and the holders of the notes would be entitled to all the security afforded by the mortgage for their payment. *Woodville vs. Reed, et al.*, 26 *Md.*, 189; *Chase vs. Lockerman*, 11 *G. & J.*, 210; *Byles vs. Tome.* 39 *Md.*, 461; *Timms and Wife vs. Shannon*, 19 *Md.*, 296; *Ten Eyck vs. Holmes*, 3 *Sanford's Ch.*, 428; *Curtis vs. Tyler & Allen*, 9 *Paige's Ch.*, 432; *Eastman vs. Foster*, 8 *Metcalf*, 19; *Maure vs. Harrison*, 1 *Eq. Cas. Abr.*, 93; *Bank of Auburn vs. Throop*, 18 *Johns. Rep.*, 505; 1 *Story's Eq. Juris.*, sec. 499.

Whoever may be the holder of the debt intended to be secured by the mortgage, will be considered in equity as the owner of the mortgage itself. *Clark vs. Levering*, 1 *Md. Ch. Dec.*, 178; *Ohio Life Ins. & Trust Co. vs. Winn & Ross*, 2 *Md. Ch. Dec.*, 25.

The Fire Insurance Company was not a purchaser for value without notice. It paid out no money whatever. On the contrary, the whole transaction amounted simply to an assignment of Ratcliffe's several mortgages held by the Building Association, the only consideration therefor, being the surrender of certain notes of the Association, which at that time were almost if not entirely worthless. It was not without notice. Because Mr. Weber, President of the Insurance Company, for six months prior to that time had been aware of the habit of the Association to issue notes instead of paying the money to its mortgagors as consideration for their mortgages. He knew that Ratcliffe had given the mortgages in question, and he had every reason therefore to presume that notes were outstanding upon these mortgages. Moreover, about six months prior to these transactions he had been furnished with a list of the notes of the Association then outstanding, including the note in controversy. If all these circumstances do not establish actual knowledge on the part of the Insurance Company, and its officers, surely they were sufficient to put them upon inquiry. *Price & Bevans vs. McDonald,*

*et al.*, 1 *Md.*, 419 ; *Md. and N. Y. Coal & Iron Co. vs. Wingert*, 8 *Gill*, 171 ; *Whilbread vs. Jourdan & Boulnois*, 1 *Younge & Coll.*, 303.

The Ratcliffe mortgages to the Association were therefore subsisting securities for the payment of the appellant's note, and the Fire Insurance Company having virtually taken an assignment of these mortgages with knowledge that said note was outstanding, or at the least under circumstances sufficient to put it upon inquiry in relation thereto, must have its claims postponed to the payment of said note.

*John Henry Keene, Jr.*, for the appellees.

STEWART, J., delivered the opinion of the Court.

There is no reason why any equities pertaining to the original note should not extend to and govern its renewal by the note, payment for which, out of the funds in Court, from the mortgaged property, is claimed by the bill in this case.

Such must be taken to have been the understanding of the parties to the transaction as indicated by the endorsement of the note in question ; and it must be treated in equity, as substituted for the former note, and entitled to the benefit of all its equities. *Markell vs. Eichelberger*, 12 *Md.*, 78.

The mortgage given by Ratcliffe to the Liberty Association purported to secure the repayment of moneys advanced by it, but it seems the note of the Company was, in fact, substituted in place of the money, and, of course, subjecting the mortgagor to any loss occasioned by the conversion of the paper into money.

It is to be presumed that in order to give its paper greater credit, and to facilitate its exchange for the cash, the note in question was endorsed or secured by the mortgage ; thus assuring and notifying the holder of the note that, besides

the responsibility of the Company for its payment, he had the right to resort to the mortgage given to the association and held by it as additional security. The mortgage was thus held by the Company as the fiduciary of the complainant, for the payment of this note. Nothing is better settled than that the mortgage is but an incident of the debt.

The complainant, as the holder of the note, and consequently of the debt secured by the mortgage, is, in equity, to be considered the real mortgagee, or as substituted to all the rights of indemnity secured by the mortgage upon the property. The mortgage, in truth and fairness, could not be discharged or released by the association under such circumstances, without the consent of the complainant, or payment of the note, more especially as the Company was not able to pay its debts at the time. See *Boyd vs. Parker, ante page* 182.

Before the association undertook to release the mortgage they should have taken care, in good faith, to have seen that the note of the complainant was paid. His debt not being paid, and the Company insolvent, he had the right to resort to the indemnity furnished by the mortgage. The release of the mortgage by the association, as his trustee, without the payment of his debt, was a breach of trust, totally unauthorized, and did not destroy his lien on the property. Under the circumstances disclosed by the testimony in the cause, it was the duty of the Insurance Company to have ascertained if the note on which the mortgage was given as a security, was paid, or still outstanding; otherwise it took the risk of the incumbrance.

The custom of the association to substitute its notes in place of the money, must be considered as known to the Insurance Company, from its dealings with the association in this transaction, if no other.

The mortgage being peculiar, and the debt stipulated to be paid in instalments, would have afforded ground for doubt whether the debt had been paid, according to its

tenor, but the manner in which the Insurance Company had settled the mortgage and taken one from Mr. Ratcliffe, in its own favor, relieves the matter of all question as to its knowledge.   The circumstances alone were sufficient to have warned the Insurance Company to make enquiry whether the note entitled to the indemnity of the mortgage had been satisfied.   In determining upon the relative equities of parties, the Courts are careful to see there has been no *laches* on the part of parties claiming its protection. They ought to be vigilant in making all pertinent inquiries, otherwise they must suffer the consequences if any one is injured by their remissness or neglect.

But besides the facts stated, which ought to have been regarded, it seems the Insurance Company, through its President, had received a list of the notes of the association outstanding, in which this note was included, some six months before the mortgage to his Company of this property, but this list, it appears, was not examined particularly by him.

That certainly must be held as sufficient, in a Court of Equity, to have put his Company on enquiry as to the character, extent and operation of this lien.

We think the Fire Insurance Company does not occupy an attitude, according to the tenor of the evidence, to claim that it ought to be considered as a *bona fide* and innocent holder of its mortgage, without any notice of the equity of the complainant.   There can be no doubt the claim is entitled in equity to be paid out of the fund arising from the sale of the mortgaged property, and that the Circuit Court erred in the rejection of the claim of the complainant.   We · must reverse the order and decree appealed from, and remand the case, that the claim may be allowed in conformity with these views.

*Order and decree reversed,*

*and cause remanded.*

(Decided 14th January, 1876.)