## CHARLES H. DEMUTH and Wife *vs.* THE OLD TOWN BANK OF BALTIMORE.

*Mortgages—Assignment of Promissory Note Secured by Mortgage—*
*Rights of Endorsee Prior to Act of 1892, Chap. 392—Release of*
*Mortgage by Mortgagee When Note is Held by Another Party—*
*Bona Fide Purchaser—Laches—Limitations.*

Where a note secured by mortgage was endorsed as collateral security
prior to the Act of 1892, chap. 392, the endorsee was entitled to the
full benefit of the lien of the mortgage itself without an assignment
thereof or notice upon the records, and his rights could not be af-
fected by a release of the mortgage executed by the mortgagee.

P., the owner of certain land, executed a conveyance of the same to
F. for a simulated consideration of $1,500, and at the same time F.
executed a mortgage to P., the grantor, to secure the payment of
$1,000 alleged to be part of the purchase money.    The deed and
mortgage were placed on record.    The mortgage recited that it was
given to secure the payment of a note of $1,000 and two notes of
$30 each for interest.    P. then borrowed from a bank a sum of money
and assigned to it the mortgage note of $1,000 as collateral security.
P.'s object in the transaction was to borrow money on his property
without himself executing a mortgage of the same.    At the time the
said deed and mortgage were executed, F. executed another deed
reconveying the property to P., but this deed was not recorded.    He
also executed another promissory note bearing the same date pay-
able to P. for $1,000 with interest, but this note did not show on its

face that it was a mortgage note as did the note transferred to the bank.    P.'s loan from the bank was renewed several times, and F.'s mortgage note was repledged upon each renewal.    Nearly three years after the original transaction, plaintiffs desired to purchase the property in question and opened negotiations with P., the mortgagee, who informed them that the mortgage had been paid and that he held a deed from F. conveying the property back to him.    Plaintiffs agreed to purchase from P. without making any inquiry of F. A release of the mortgage by P. was executed and recorded and the deed from F. to P., dated three years before, was also recorded.    P. exhibited to plaintiffs a note for $1,000 which he falsely asserted to be the original mortgage note, and the plaintiffs, acting in good faith, without knowledge of the assignment of the mortgage note to the bank, paid the purchase money and received a conveyance of the property from P.    Subsequently the bank obtained a decree for the sale of the property for the payment of the mortgage note held by it.    Plaintiffs petitioned for a rescission of the decree.    The mortgage was executed and the note assigned prior to the passage of the Act of 1892, chap. 392, which changed the law relating to mortgage notes.    *Held*,

1st.    That since the *bona fide* endorsee of a note secured by mortgage was entitled to the full benefit of the lien without notice upon the records of such transfer, the assignment of the mortgage note by P. to the bank operated to carry the mortgage and deprived P. of all authority to deal with the mortgage and the fraud practiced by him upon the plaintiffs could not affect the rights of the bank as equitable owner of the mortgage, and that P.'s attempted release of the mortgage was utterly ineffectual.

2nd.    That the facts that at the time of the purchase by plaintiffs the note of F. for $1,000 exhibited by P. did not appear on its face to be a mortgage note while the interest notes did so appear, and that the assignment from F. to P. bore the same date as the mortgage, were circumstances sufficient to put the plaintiffs upon inquiry.

3rd.    That the failure of the bank to obtain an assignment of the mortgage and record the same or to place on record a notice of its ownership of the note did not defeat its right to enforce the mortgage.

4th.    That the bank was not guilty of laches in not enforcing payment of the note by foreclosure of the mortgage for upwards of six years after the maturity of the note, and four years after the purchase of the property by the plaintiffs, who are in no worse a position now than they were immediately after their payment of the purchase money to P.

5th.    That although the mortgage note endorsed by P. to the bank was barred by limitations at the time the decree of sale was made, still the right of the bank to foreclose the mortgage could not be barred by the lapse of less than twenty years.

Laches is such neglect or omission to assert a right as, taken in con-
nection with lapse of time more or less great and other circumstances
causing prejudice to an adverse party, operates as a bar in a Court
of Equity.   There must be a legal duty to do some act, a failure to
perform that duty and attendant circumstances which cause prejudice
to an adverse party before the doctrine can be successfully invoked.
Mere lapse of time, without more, unless of sufficient duration to
constitute the bar of the Statute of Limitations, will not be sufficient.

Appeal from a decree of the Circuit Court of Baltimore
City (DENNIS, J.), dismissing the appellants' petition asking
for a rescission of a decree for a sale under the mortgage
mentioned in this case.

The cause was argued before McSHERRY, C. J., BRYAN,
BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*M. R. Walter* (with whom was *Millard F. Taylor,* and
*Robert F. Leach, Jr.,* on the brief), for the appellants.

It was impossible for the appellants to have done more
than they did.   They had the title thoroughly examined.
The records disclosed that Price was the mortgagee, that
there had been no assignment of the mortgage claim, and
that there had been no proceedings to foreclose.   There
was, further, nothing to show that anyone other than Price
was interested in the mortgage.   Besides, Price, *the mort-
gagee,* produced at the time of the transfer to the appellants,
the genuine note for one thousand dollars and the two in-
terest notes, all dated January 28, 1888, which he repre-
sented to be the mortgage notes for which the mortgage
had been given as security, which representations, the ap-
pellants were, of course, bound to believe.   There was
nothing further for them to do.   " In the absence of fraud,
a conveyance by the party who appears on the record to be
the owner of the mortgages should be sufficient to protect
a purchaser who has no actual or constructive notice of
title in any other."   *Welch* v. *Priest,* 8 Allen (Mass)., 141.

In the present case, the transaction was not only directly
with the mortgagee, but he produced and delivered to the
appellants the genuine notes of Fowler (for principal and

interest), which he represented to be the genuine mortgage notes, and which corresponded in every respect with the notes described in the mortgage. There was no way by which the appellants could possibly learn that the appellee claimed any interest in the mortgage.

The appellee having never demanded payment of the note, nor made any effort to collect it, and having taken no steps to foreclose until October 31, 1895, six years and nine months after its maturity, nor to give any notice whatsoever that it claimed any interest in the mortgage, and having during all that time allowed Price to appear by the Land Records as, and having thus practically held him out to the public to be, the absolute owner thereof, is estopped from claiming any interest under said mortgage as against these appellants, who are *bona fide* purchasers for value and without notice. *Noble* v. *Turner*, 69 Md. 527 ; *Phelps' Equity*, section 160, pages 227, 228 ; *Hawkins* v. *Chapman*, 36 Md. 100 ; *Hammond* v. *Hopkins*, 143 U. S. 347 ; *Hall* v. *Claggett*, 48 Md. 243. It is not merely in analogy to the Statute of Limitations that a Court of Equity refuses to lend its aid to stale demands ; there must be conscience, good faith and reasonable diligence to call into action the power of the Court. Where these are wanting the Court is passive and does nothing. Laches and neglect are always discountenanced. *Nelson* v. *Hagerstown Bank*, 27 Md. 51 ; *McKnight* v. *Taylor*, 1 Howard, 168. From the earliest times Courts of Equity have refused their aid to those who have neglected for a reasonable length of time to assert their claims, *especially when the legal title has been transferred to purchasers without notice. Pairo* v. *Vickery*, 37 Md. 487 ; *Hammond* v. *Hopkins*, 143 U. S. 250.

Or where the death of witnesses (as in this case) renders the ascertainment of the exact facts impossible. *Hammond* v. *Hopkins*, 143 U. S. 250 ; *United States* v. *Beebe*, 127 U. S. 347. The equities of the appellants are, to say the least, equal to those of the appellee, and the legal title of the appellants ought, therefore, to prevail. *Phelps' Equity*,

page 328.   The appellee has, if anything, only an equitable claim, by virtue of the transfer of the note it holds and it can not, therefore, invoke the aid of a Court of Equity, unless it can show that its own conduct has been consistent with equity.   *Hall* v. *McCann*, 51 Md. 350.   Assuming that the appellee is as innocent as the appellants are, the loss should fall upon the appellee, as by reasonable care it could have protected itself, and its conduct misled the appellants. *Phelps' Equity*, page 263 ; *Bank* v. *Creswell*, 100 U. S. 630, 643 ; *Lister* v. *Allen*, 31 Md. 548 ; *Hamilton* v. *Central R. R. Co.*, 44 Md. 551, 559.   The appellants could at any time prior to a few months before Price's death, have recovered their debt from him; as he was then possessor of sufficient property.

The mortgage was not assigned to the appellee.  .It claims only to have received the principal mortgage note as collateral security for a loan to Price.   The note fell due January 31, 1889.   The petition for a decree was filed October 31, 1895, six years and nine months after the maturity of the note and the cause of action thereon had arisen. As its only claim is upon the note and recovery on the note is barred by limitations, it has no further interest in the mortgage.   *Lingan* v. *Henderson*, 1 Bland, 273.

The appellee's counsel in the Circuit Court claimed that Price had renewed his note from time to time down to the year 1895, and that that fact kept the note of Fowler alive as against the world.   How is it possible that the renewal by Price of his own note can have the slightest bearing upon the merits of this case ?   We are dealing with the mortgage note of Fowler, not with Price's own notes that the bank discounted for him.

*Thomas Hughes*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This is a case of exceedingly great hardship, and we have diligently, but in vain, sought for some tenable ground upon which the appellants could be relieved from the loss

that an affirmance of the decree appealed from will neces-
sarily subject them to. ` But hard cases, it has often been
said, almost always make bad law ; and hence it is, in the
end, far better that the established rules of law should be
strictly applied, even though in particular instances serious
loss may be thereby inflicted on some individuals, than that
by subtle distinctions invented and resorted to solely to
escape such consequences, long settled and firmly fixed
doctrines should be shaken, questioned, confused or doubted.
*Lovejoy* v. *Irelan*, 17 Md. 527.    It is often difficult to resist
the influence which a palpable hardship is calculated to
exert ; but a rigid adherence to fundamental principles at
all times and a stern insensibility to the results which an
unvarying enforcement of those principles may occasionally
entail, are the surest, if not the only, means by which
stability and certainty in the administration of the law may
be secured.    It is for the Legislature by appropriate enact-
ments and not for the Courts by metaphysical refinements
to provide a remedy against the happening of hardships
which may result from the consistent application of estab-
lished legal principles.

  ` Now, the facts before us are these : Samuel D. Price was
in 1888 the owner of some leasehold property in Baltimore
City. This on January the twenty-eighth, 1888, he as-
signed to Henry C. Fowler, an employee of his, for an al-
leged, but in fact, for a simulated consideration of fifteen
hundred dollars.    On the same day and as a part of the
same transaction, Fowler executed and delivered to Price a
mortgage on the same property to secure the payment of
one thousand dollars, stated to be the balance of purchase
money due by Fowler to Price ; and Fowler also signed
and delivered a promissory note of even date payable to
Price in one year, for the principal sum of one thousand
dollars, and two other promissory notes, each for the sum
of thirty dollars, payable in six and twelve months, for the
interest.    These three notes are described in the mortgage.
The deed and the mortgage were promptly placed on record.

Simultaneously with the execution of the deed, the mort-
gage and the notes, Fowler also executed and delivered to
Price a deed reconveying and reassigning to him the iden-
tical leasehold property. This deed was not placed on
record until November the twelfth, 1891. The sale by
Price to Fowler was not an actual sale at all. It was a
mere device to which Price, who was a builder, resorted to
raise money without himself executing a mortgage on his
property. To all appearances, however, so far as the pub-
lic records disclosed, it was a perfectly regular and *bona fide*
transaction. On January the thirty-first, 1888, Price bor-
rowed from the Old Town Bank of Baltimore, the sum of
one thousand two hundred dollars, and indorsed to the
bank as collateral the one thousand dollar mortgage note
of Fowler, and another note with which we have no con-
cern. Price's note to the bank was repeatedly renewed,
and when each renewal was made Fowler's note to Price
was repledged. There can be no doubt about the entire
good faith of the bank in this transaction. The bank con-
tinued to hold the note which on its face showed that it
was secured by a mortgage of even date, and on October
the thirty-first, 1895, after Price had become insolvent, and
shortly before he died, the bank filed in the Circuit Court
of Baltimore City a petition praying for a decree directing
a sale of the mortgaged premises, and under the terms of
the mortgage the usual decree was forthwith signed. Within
a month thereafter the appellants came into the case, and
by petition asked that the decree be set aside. They base
the relief which they seek upon these facts : In November,
1891, the appellants desiring to purchase the property in
question had the title examined, and it being then discov-
ered that Price held the mortgage thereon from Fowler,
negotiations were opened, not with Fowler—the apparent
owner—but with Price, who informed the appellants and
their counsel that the mortgage had been paid and that he
held a deed from Fowler assigning the property back to
him. He thereupon produced the deed of assignment con-

temporaneous in date with the mortgage and with the deed from Price to Fowler; and he exhibited three promissory notes purporting to be the three mortgage notes described in the mortgage from Fowler to him—the one note for one thousand dollars, and the other two, each for thirty dollars. Without making any inquiry of Fowler, the appellants concluded the purchase with Price; and Price, on November twelfth, 1891, released on the public records the mortgage of January the twenty-eighth, 1888, and then placed on record the deed of assignment from Fowler to himself dated, as stated, on January the twenty-eighth, 1888, and delivered to the appellants a deed dated November the twelfth, 1891, assigning to them the same property. Thereupon the appellants paid him thirteen hundred dollars—the amount of the purchase money. The appellants had no knowledge of the outstanding note in the hands of the bank, and they believed that the one thousand dollar note exhibited by Price and stated by him to be the identical note secured by the mortgage was in fact the mortgage note. The evidence, however, clearly shows that Fowler signed *two* one thousand dollar notes on the same day, and the one retained by Price and subsequently exhibited to the appellants as the genuine mortgage note was not in fact the note secured by and described in the mortgage at all; and that the note indorsed to the bank and forming the basis of the decree was in reality the mortgage note. About this the evidence leaves no room for doubt. The appellants claim that they are *bona fide* purchasers of the property from Price for value, and are, as such, entitled to hold it against the claim of the Old Town Bank. They undoubtedly paid their money for the property to Price, who shamefully deceived and misled them; but whether these facts under the circumstances are sufficient to defeat the rights acquired by the bank is the question brought before us. The Court below dismissed the petition asking for a rescision of the decree, and from the order of dismissal which permits the decree of October the thirty-first, 1895,

directing a sale of the property to stand, this appeal was taken.

Now it cannot be doubted that prior to the adoption of the Act of 1892, ch. 392 (which, however, has no application to this case), the law of Maryland was, and still is, except in so far as modified by the statute just named, that the indorsement or assignment of a promissory note secured by a mortgage gives to a *bona fide* holder of such note the benefit of the lien of the mortgage as fully as though he had been named as the actual mortgagee; and this, too, though the public records furnish no evidence of the indorsement or transfer and delivery of the note. The transfer or indorsement of the note, which is the principal, carries the mortgage, which is the incident, and effectually clothes the *bona fide* holder of the note with the lien of the mortgage itself. *Clark* v. *Levering*, 1 Md. Ch. Dec. 178; *Ohio L. Ins. Co.* v. *Ross and Winn*, 2 Md. Ch. Dec. 26; *Byles* v. *Tome*, 39 Md. 463; *Boyd* v. *Parker & Co.*, 43 Md. 199; *McCracken* v. *German F. Ins. Co.*, 43 Md. 477; *Hewell et al.* v. *Coulbourn*, 54 Md. 63. Clearly, then, the indorsement and delivery by Price of the one thousand dollar mortgage note to the Old Town Bank, on January the thirty-first, 1888, for value, operated to carry the mortgage with it and stripped Price of all authority to deal with that mortgage without the consent or sanction of the bank. From the moment of that indorsement and delivery it ceased to be in the power of Price to release the mortgage so as to deprive the bank, by which the note was held, of the benefit of its security under the mortgage. This is precisely what was decided in *Boyd* v. *Parker & Co.*, *supra*, a case that cannot be distinguished from this. If, then, the bank became the equitable owner of the mortgage and Price no longer had power to release it so as to affect the rights of the bank, how can the fraud and deception which Price undoubtedly practiced upon the appellants, and for which the bank was in no way responsible or answerable, interfere with the title of the bank or give to the appellants rights superior to those

which Price himself could have asserted? In answer to this it is said the appellants are *bona fide* purchasers without notice and consequently are entitled to the protection of a Court of Equity. *Bona fide* purchasers without notice and for value are a highly favored class in equity, and in a certain sense the appellants bought in good faith; but it is not every *bona fide* purchaser who can invoke the interposition of a Court of Equity to defeat the equally meritorious claims of others. In the recent case of *Seldner* v. *McCreery*, 75 Md. 296, we said: "Where a title is perfect on its face and no known circumstances exist to impeach it, or to put a purchaser on inquiry, one who buys *bona fide* and for value, occupies one of the most highly favored positions in the law. If circumstances afterwards come to light which invalidate the title of the seller, there is nothing to prevent redress against him in behalf of the party who may be injured; but the innocent purchaser must be protected at all events." This language was used in replying to an objection that a will, upon which the title then being examined depended, had been proved only in common form and might consequently, thereafter be caveated, whereby the purchaser would be involved in a litigation. No facts were shown which rendered it probable that the will was invalid and the probate in common form being sufficient proof of the will to pass the title to the devisee, the mere *possibility* that the will might afterwards be contested was not a ground upon which the title that it did pass could be impeached. Under the will the seller *had* a title and of course circumstances coming to light afterwards and *invalidating* that title could not affect a *bona fide* purchaser for value and without notice. But we have, here and now, no such question before us. Price had *no title* on the face of the records except as mortgagee when the negotiations were opened with him by the appellants; but even that title he had parted with nearly four years previously by assigning or indorsing the mortgage note to the bank. Consequently at the very time he executed the deed to the appellants the bank owned

the lien of the mortgage ; and because the bank held the note secured by the mortgage Price's attempted release of the mortgage was utterly ineffectual. No circumstance has come to light since the date of the deed to the appellants which *invalidates* Price's title ; for Price had no title at the time he made the deed that was not actually subject to the lien of the mortgage in the hands of the bank.

But in addition to this, the whole difficulty has arisen out of the deception practiced by Price upon the appellants. The bank had no agency in misleading them and is clearly not responsible for Price's fraud. The appellants do not seem to have considered it singular that if the mortgage notes had been paid by Fowler, as Price represented, the notes themselves still remained in the possession of Price. Had they been altogether free from fault or less willing to rely on the statements of Price, they would have applied to Fowler, the mortgagor, and would have learned from him the true nature of the transaction, and the important fact that he had in reality executed two notes each for one thousand dollars on the same day, and a casual comparison of the interest notes with the one thousand dollar note exhibited by Price would have indicated such a marked difference as to suggest, at least, a doubt as to whether the one thousand dollar note shown to them was the genuine mortgage note. The interest notes shown by Price to the appellants contained on their face the words, " collateral with mortgage of even date herewith," and along the margin the words " mortgage note." The one thousand dollar note produced by Price contained none of these words and in terms drew interest from its date, payable half-yearly—a provision wholly unnecessary and altogether out of place where separate interest notes had been given. But more than this, a comparison of the note produced by Price with the description in the mortgage of the one secured by the mortgage would have indicated that Price was not then in possession of the genuine mortgage note ; because, as just stated, the note produced was drawn to bear interest from

its date, whereas the note described in the mortgage was a note for the principal sum of one thousand dollars payable one year after date " and for the interest to accrue *thereon*" two interest notes were provided. The note produced by Price bore no mark to designate that it was a note secured by a mortgage at all, as each of the interest notes did. These were circumstances calculated to suggest inquiry, if not to excite suspicion, when they are all considered together ; and were clearly sufficient to put the purchasers to a further investigation than they actually made. The note produced by the bank corresponds precisely with the interest notes, has the same words upon its face as to being collateral with mortgage, and the same words on its margin and does not bear interest from its date.

Obviously the note held by the bank was the genuine mortgage note and unless the bank's failure to secure an assignment of the mortgage or its omission to have placed on record a notice that it owned the note, forfeits its right to the lien created by the mortgage, no act done by Price without the bank's concurrence or sanction can prejudice or affect its lien. If this were not so there would have been no occasion for the adoption of the Act of 1892, ch. 392.

But laches and limitations are relied on by the appellants as final defences. It has been repeatedly said that the application of the doctrine of laches depends on the circumstances of each particular case, and whilst in the abstract this is true, it is apt to be misleading if the constituent and essential elements which go to make up laches, in the technical sense of the term, are overlooked or disregarded. Strictly speaking, and using the term as it is understood in the law, laches is such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing *prejudice* to an adverse party, operates as a bar in a Court of Equity. LORD ELLENBOROUGH said in discussing the question whether a failure to present a bill of exchange at the specified place of payment was sufficient to discharge the acceptor:

" Laches is a neglect to do something which by law a man is obliged to do. Whether my neglect to call at a house where a man informs me that I may get the money amounts to laches depends on whether I am obliged to call there." *Selby* v. *Abithoe*, 4 M. & S. 462. Obviously, then, there must be a legal duty to do some act, a failure to do that duty and attendant circumstances which cause *prejudice* to an adverse party before the doctrine can be successfully invoked. Mere lapse of time, without more, unless of sufficient duration to amount to and constitute the bar of the statute of limitations, will not be sufficient. Now, there was clearly no duty which the bank owed any one to foreclose the mortgage prior to the date of the deed to the appellants. Its omission to do so anterior to the date of the purchase by the appellants was not, therefore, the omission to do something which by law it was required to do ; and the subsequent delay—that is the delay between the date of the purchase by the appellants and the filing of the decree appealed from—placed the appellants in no worse position than they occupied the very moment they paid the purchase money to and took the deed from Price. No act of the Old Town Bank, and no omission on its part to do something that it was legally bound to do, operated to *prejudice* the appellants, unless the mere naked failure to secure an assignment of the mortgage and to have that assignment recorded was an omission to perform an act which the bank was obliged to perform. But the decided cases we have referred to conclusively establish that no such duty or obligation rested on the bank. The essential elements of laches are, therefore, wanting ; and the question comes down to one of mere lapse of time, or the Statute of Limitations. About this question—the Statute of Limitations—there is no room to doubt. Whilst it may be conceded that the mortgage note of January, 1888, given by Fowler to Price, and by Price indorsed to the bank, was barred by limitations when the decree was signed, still the right of the bank to have the *mortgage* foreclosed could not be

barred by the lapse of less than twenty years. This principle has been expressly settled by this Court, and we need do no more than refer to two of the cases in which it was distinctly applied. *B. & O. R. R. Co.* v. *Trimble,* 51 Md. 111; *Magruder* v. *Peter,* 11 G. & J. 217.

As we find no error in the decree appealed from it will be affirmed with costs.

> *Decree affirmed with costs above and below.*

(Decided March 31st, 1897).