A LEFTWICH SINCLAIR, Administrator, *vs.* THE AUXILIARY REALTY COMPANY.

*Bill to Vacate Alleged Fraudulent Conveyance—Parties—Allegation·of Indebtedness to Plaintiff—Limitations—Demurrer—Abatement and Revivor—Death of Defendants—Bringing in Represeutative by Petition—Laches.*

Upon a bill to vacate a conveyance on the ground that it was fraudulent, as against the plaintiff, the general rule is that the only necessary parties defendant, are the grantor and grantee in the deed.

When such a bill avers that the defendant grantor became indebted to the plaintiff in a certain sum, which indebtedness still remains unpaid and unsatisfied, there is a sufficient allegation of an existing indebtedness and it is not necessary that the evidence of the indebtedness should be specifically set out.

A bill to vacate a fraudulent conveyance filed in 1901, averred that the defendant grantor became indebted to the plaintiff in 1885 in a certain sum which remains unpaid. *Held*, that the bill does not show on its face, that the claim was barred by limitations, since it does not appear when the indebtedness became due and that, consequently, a demurrer to the bill, for this reason, should be overruled.

When the grantee, in a deed, is the sole heir-at-law of the grantor, a suit to vacate the same because fraudulent, as against the plaintiff a creditor

of the grantor, does not abate upon the death of the grantor, leaving the other defendant as the sole heir.

Under Code, Art. 16, sec. 146A, when a party to a suit in equity dies before the final decree, his heir-at-law or legal representative may be brought in upon petition filed in the cause. By this section, a bill of revivor is no longer necessary, but under Art. 16, sec. 12, resort may also be had to that mode of bringing in the personal representative of a deceased party.

After the institution of a suit to vacate a fraudulent conveyance, the property in question was conveyed by the defendant grantee to a purchaser and afterwards this defendant died and before final decree. *Held,* that the purchaser *pendente lite* is not a necessary party and that under Code, Art. 16, sec. 146A, he is not the representative of the deceased defendant who should be made a party in his place; moreover, that when such purchaser has been made a party to the cause upon his own petition he is not entitled to object that he should have been made a party upon the petition of the plaintiff.

Neither affidavits and exhibits filed with the answer, nor the answer itself, can be considered upon a demurrer to the bill.

A bill to vacate a conveyance from a mother to her son was filed against them in 1901, by the creditor of the mother and both defendants answered. In the same year defendant suggested the death of plaintiff and alleged that this caused the suit to abate. In 1902 the administrator of the plaintiff was made a party plaintiff. The grantee in the conveyance assailed conveyed the property to W., who conveyed it to the A. Company, which was made a party defendant on its petition. Plaintiff suggested the death of both defendants, mother and son, intestate, the former dying first, by which the estate passed to the other defendant and asked that the latter's only child be made a defendant, which was done. Plaintiff administrator, then filed a bill of revivor to which the A. Company demurred on various grounds, among others that the bill and proceedings showed that the plaintiff had been guilty of laches. *Held,* that neither the failure of the plaintiff prior to the death of the grantor defendant, to take notice of her affidavit filed in the answer of the other defendant, nor the failure to take notice of the suggestion that the suit abated by the death of the original plaintiff, nor the failure to suggest the death of the grantor defendant and to make the purchaser *pendente lite* a party, nor the deaths of the original defendants constituted laches. None of these things show a neglect by the plaintiff to do something which he ought to have done thereby causing prejudice to the defendant. The delay in making the administrator of the original plaintiff a party is shown to have been occasioned by a caveat to her will and there is nothing in the case to show that the plaintiff's claim was a stale one when the bill was filed.

Appeal from the Circuit Court No. 2, of Baltimore City, (DOBLER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Armstrong Thomas* (with whom was *Roger W. Cull* on the brief), for the appellant.

*David Stewart*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

The record in this case is exceedingly involved and complicated, though the questions which are ultimately raised are not difficult of solution.   It will be necessary in order to clearly present these questions to state in as succinct a form as possible the various steps taken during the progress of the proceeding.

On the 22nd of April, 1901, Annie E. Lampkin filed in the Circuit Court No. 2, of Baltimore, a bill of complaint against Elizabeth Smith and Frank St. Clair Smith.   Without now pausing to state the allegations of the bill, we need only say, that its object was to procure a decree vacating a deed made by Elizabeth Smith to Frank St. Clair Smith, upon the ground that it was a voluntary conveyance without consideration and was made in fraud of the rights of the plaintiff who was a creditor of the grantor.   On the same day, that is, April 22nd, 1901, the defendant, Elizabeth Smith, filed an answer admitting the allegations of the bill but denying that there was an intent upon her part to defraud the plaintiff.   On May the 28th of the same year, the other defendant, Frank St. Clair Smith, filed his answer, wherein he denied the indebtedness of his mother, Elizabeth Smith, to the plaintiff and wherein he demanded strict and full proof of every averment of the bill not expressly admitted by his answer.   On October 17th, 1901, the defendant, Frank St. Clair Smith, filed a petition suggesting the death of the plaintiff and alleging that she departed this life on the 31st of the preceding month of May, and praying that the cause might be ordered abated on that account.   There is no copy of the docket entries to be found in the record.   The next step taken in the cause, so far as the

record discloses, was a petition filed on February 14th, 1902, by one A. Leftwich Sinclair, of Washington, wherein it is alleged that the plaintiff had died, and that letters of administration upon her estate had been granted on the 10th of February, 1902, by the Supreme Court of the District of Columbia sitting as a probate Court, and praying that the petitioner as administrator might be made a party plaintiff to the cause. Upon that petition, on the same day an *order nisi* was passed making Sinclair a party plaintiff as prayed, unless cause to the contrary should be shown before the 28th day of the same month, provided a copy of the petition and order were served on the defendants or their solicitors on or before the 18th of February. No cause to the contrary having been shown, an order was passed on the 14th of October, 1902, making Sinclair a party plaintiff as prayed in his petition of February 14th. In the meantime, however, it appears that on May the 22nd, 1902, the appellee in this cause, viz., the Auxiliary Realty Company of Baltimore, filed a petition in these proceedings wherein it was alleged: *First*, that by a deed dated March 19th, 1902, a certain George Wiegal conveyed the property involved in this controversy to the Realty Company; *secondly*, that Wiegal had acquired title to this same property from Frank St. Clair Smith by deed dated January 3rd, 1902, and *thirdly*, that Wiegal had purchased from Frank Smith the property and paid therefor the sum of $2,600, subject to a $1,100 mortgage, and that he had bought it in absolute good faith and without any knowledge of the pending proceeding, and that the Realty Company had likewise purchased the property from Wiegal in good faith for value and without notice of the pendency of this suit. The petition concluded with a prayer asking that the Realty Company, being the actual person interested in the result of the suit, might be made a party defendant with leave to defend the same. On the same day an order of Court was passed granting the prayer of the petition and making the Realty Company a party defendant and giving it leave to defend. Nothing further seems to have been done until the 20th of November, 1902. On the 20th of November, 1902,

Sinclair, administrator, filed a petition wherein he alleged both the death of Elizabeth Smith and Frank St. Clair Smith and charged that both had died intestate and that no administration had been taken out on the·estate of either; that Elizabeth Smith, the mother of Frank St. Clair Smith, having died first, the latter, her only child, became her sole heir at law and that by the death of Frank St. Clair Smith, his daughter and only child, Lilian St. Clair Brady, became his sole heir. And the petition prayed that Lilian St. Clair Brady might be brought in by subpœna as a party defendant to show cause if any she might have, why the relief prayed in the original bill of complaint should not be granted. On the same day an order was signed making the said Lilian St. Clair Brady a party defendant and directing that a subpœna issue as prayed. On January 8th, 1903, the Realty Company filed a petition asking to have the order of October 14th, 1902, and the order of November 20th revoked. The order of October 14th, it will be remembered, was the one by which Sinclair, as administrator, was made a party plaintiff to the suit in place of Lampkin, deceased; and the order of November 20th was the one by which Lilian St. Clair Brady was made a defendant in the cause. On April 1st, 1903, the Court passed upon the petition of January 8th, 1903, and revoked the orders of October 14th and of November 20th, and dismissed the petitions on which those orders were passed, but dismissed them without prejudice to the right of Sinclair, administrator, to file an original bill or supplemental bill in the nature of a bill of revivor within thirty days from the date of the order. On the 12th of February, 1903, the Realty Company filed another motion asking that an entry should be made that the "case is terminated" and cannot be revived on the ground that it never was a *lis pendens* because Elizabeth Smith was never in Court and because the bill of complaint was defective, and for sundry other reasons. This motion seems to have come to a hearing on the 20th of May, 1903, upon which day the Court passed an order overruling the motion of February 12th, 1903, and modifying its antecedent order of April 1st, 1903,

to the extent of allowing Sinclair, administrator, to institute such further proceedings in this cause or by an original bill as he may desire for the revivor of this suit, provided such proceedings were instituted within fifteen days. The next step taken in the case appears to be a petition filed June 1st, 1903, by Sinclair, administrator, wherein much, if not all of the facts heretofore stated in this opinion are reiterated at length. In addition to what has just been stated the petition alleged that the delay in procuring letters of administration on the estate of Annie E. Lampkin was due to litigation pending in the Probate Court of the District of Columbia, and that that litigation was not brought to a conclusion until February 7th, 1902. Letters of administration upon her estate, as we have already stated, were issued on the 10th of February, 1902, and her administrator filed his petition to be made a party plaintiff on the 14th of February, 1902, as previously noted. The prayer of the petition of June 1st, 1903, asked the Court to make Sinclair a party plaintiff, a thing which had been already done on the 14th of October, 1902, and had then been undone on the 1st of April, 1903, and which had been again modified on the 20th of May following. On the 2nd of June, 1903, an order was passed making Sinclair a party plaintiff and directing the Auxiliary Realty Company to proceed in the cause by demurrer, plea or answer to the bill of complaint and to the petition of June 1st, within twenty days from June 2nd. On June 15th, the Realty Company demurred to the original bill of complaint and to the petition of June 1st, and for the cause of demurrer assigned thirteen reasons. These thirteen reasons or causes may be reduced to five. *First,* that the allegations of the bill of complaint are insufficient as to parties. *Second,* that its allegations are insufficient as to the alleged debt. *Third,* that the bill of complaint shows on its face a claim barred by limitations and laches. *Fourth,* that by the death of Elizabeth Smith any estate remaining in her if the deed were void, vested in her son and only heir, Frank St. Clair Smith, and that thereby any right that may have existed in the plaintiff as a creditor of Elizabeth to have the

deed from Elizabeth Smith to Frank St. Clair Smith set aside
did not survive; and *Fifth*, that both the bill of complaint and
the petition of June 1st, show on their face that the petitioner
has been guilty of laches.   This demurrer came on for hear-
ing and on the 22nd day of September, 1903, it was adjudged
and ordered by Circuit Court No. 2, that the demurrer be sus-
tained with the privilege to the petitioner, Sinclair, to amend
his proceedings as he may be advised, within fifteen days. On
the 22nd of October, 1903, an appeal was taken from the
order of September 22nd.   Thus the questions brought up,
for review are the ones we have just stated as arising on the
demurrer.   And these questions thus raised by the demurrer
will now be considered in the order in which they have been
stated.

*First.* The allegations of the bill of complaint, it is con-
tended, are insufficient as to parties.   This objection has re-
lation to the bill of complaint and to no subsequent petition or
motion.   The bill was filed by a person claiming to be a cred-
itor of Elizabeth Smith and the defendants were the alleged
debtor, Elizabeth Smith and her son, the grantee in the deed
which the bill assailed.   In suits to vacate deeds for fraud
against creditors all the parties to the deed are in general nec-
essary parties to the cause.   Thus the grantor must be made
a party defendant as well on account of the fraud charged as
because of the title remaining in him for the benefit of credi-
tors   *   *   *   *   So also the grantee or grantees in such a
deed must be parties as having an interest to sustain the con-
veyance. *Miller's Equity*, sec. 55, and cases cited in notes one
and five.   At the time the bill was filed both the grantor and
the grantee were alive and both were made parties and an-
swered the bill.   There were no other persons interested in
the property or the controversy who should have been made
parties.   Without further comment we hold that the objec-
tion as to the insufficiency of parties is untenable.

*Second.* The objection that the allegations of the bill are in-
sufficient as to the alleged debt is equally without foundation.
The bill avers that Elizabeth Smith became indebted to the

plaintiff on the first day of January, 1885, in the sum of
$1,200, "which indebtedness, with the interest thereon still
remains unpaid and unsatisfied." This is a clear allegation of
an existing indebtedness, and that is all that need be averred.
There must always, in cases of this character, be a distinct
allegation of an existing indebtedness, but there is no neces-
sity for setting out the evidence by which that indebtedness
may be proved. Prior to the *Act of 1835; ch. 380*, it was nec-
essary for a creditor to reduce his claim to a judgment before
proceeding in Chancery to vacate a fraudulent conveyance
made by his debtor. But since that Act, which is now incor-
porated in *sec. 46 of Art. 16 of the Code*, it is not required in
any case where a proceeding in equity is invoked, to vacate a
conveyance because fraudulent against creditors, for the cred-
itor to have obtained a judgment at law on his demand in
order to secure the relief sought in equity. Of course, before
relief can be granted, the claim or demand must be established
by proof; but there is no rule of equity pleading which re-
quires that the cause of action or the evidence of it should be
specifically set out in the bill of complaint. *McDowell* v.
*Goldsmith*, 6 Md. 319.

*Third.* The objection that the bill of complaint shows on its
face a claim barred by limitation and laches cannot prevail.
It is true that in the first paragraph of the bill it is averred
that Elizabeth Smith became indebted to the plaintiff in 1885,
or more than sixteen years before the bill of complaint was
filed, but it is nowhere charged, nor does it appear on the face
of the bill, that the indebtedness which then was incurred was
due and payable at that time. In other words, it does not
affirmatively appear that a right of action accrued to the plain-
tiff more than three years before the filing of the bill. As the
bill does not disclose that the right to sue upon the indebted-
ness alleged to have been contracted in 1885, had accrued
more than three years before the filing of the bill, the objec-
tion that the claim is barred by limitation is not presented on
the face of the proceedings and therefore cannot be availed of
by demurrer. This objection therefore cannot avail.

*Fourth.* The theory upon which the fourth objection rests is this: Conceding, as the demurrer does, that Elizabeth Smith fraudulently conveyed the property to her son, still, though she was a necessary party defendant in a proceeding instituted to vacate that conveyance, her death caused whatever interest she had in the property to vest in her son, the grantee, and that he being her sole heir at law took title to the property by inheritance and not by the conveyance and that therefore her death abated the suit at once.    In other words, where a fraudulent grantee is the heir at law of the fraudulent grantor and a bill is filed during the life of both by a creditor of the latter to have the fraudulent conveyance annulled, the death of the grantor irretrievably abates the suit because the grantee then takes as heir at law and not as fraudulent grantee.    This is rather a novel proposition especially in the teeth of *sec. 1, Art. 16 of the Code,* which provides that no suit in Chancery shall abate by the death of any of the parties in a case where the rights involved in the suit survive.   By *sec. 2 of the same Article,* it is declared that if any of the parties to a suit in Chancery, whether the plaintiff or defendant, shall die, after the filing of the bill or petition, it shall not be necessary to file a bill of revivor, but any of the surviving parties may file a suggestion of such death setting forth when the death occurred and who is the legal representative of such deceased parties, and how he is representative; whether by devise, descent or otherwise.    By the *Act of 1892, ch. 654,* now codified as *sec. 146A, Art. 16,* Supplement to the Code, it is enacted that when any plaintiff or any defendant who has been duly summoned to answer a bill or petition in any of the equity Courts of this State shall die before final decree leaving heirs at law or representatives who should be made parties to said cause    *    *    *    it shall not be necessary to file an amended bill or petition in said cause, but on a short petition setting forth their interest in said cause, they shall be made a party plaintiff, or if a defendant, the Court shall cause a summons to be issued requiring said party or parties to answer said bill or petition as originally filed and said short petition

shall be taken and considered as a part of said bill.    Whilst these statutory provisions do not abrogate the mode of reviving a suit by a bill of revivor as is clearly indicated by *sec. 12 of Art. 16,* they give a new method of attaining the object which before their adoption could only have been effected by such a bill.    They were intended to provide a course of proceeding less expensive and less dilatory than the previous method by bill of revivor, the general object being to shorten and expedite proceedings in Chancery.    It cannot be doubted, especially under the *Act of 1892,* that the heirs at law of a deceased defendant may be brought in upon petition when the subject of the controversy is real estate in which the heir at law may have an interest.    If this controversy had not been complicated by the conveyance to Weigal and by the deed from Weigal to the Realty Company, it would hardly be suggested that upon the death of Elizabeth Smith the suit could not have proceeded against Frank St. Smith, the grantee.    And it is equally clear that upon the death of Frank St. Clair Smith, his heir at law would have been the proper party to have succeeded him, as defendant on the docket.    If the *Act of 1892* is operative at all it would certainly have applied to that situation, and under it Lilian St. Clair Brady could have been made a party defendant on a short petition as therein provided, without the necessity of filing a bill of revivor or an original bill in the nature of a bill of revivor.    If that be so, how did the conveyance from Weigal to the Realty Company alter the situation?    Both Weigal and the Realty Company were purchasers *pendente lite* and consequently are not necessary parties to the proceeding. In the case of *Stockett* v. *Goodman, Administratrix,* 47 Md. 54, it appeared that the administratrix filed a bill in equity to foreclose certain mortgages executed by the appellant to the appellee's decedent.    The bill was duly answered.    During the pendency of the proceeding the appellant conveyed all his property to certain trustees in trust for the purpose specified in the deed.    Those trustees then filed a petition in the equity foreclosure cause, asking to be made a party to the suit and

praying that the plaintiff might be required to accept or refuse certain provisions in the deed of trust, which need not be mentioned here.   In dealing with the condition thus presented this Court, reviewing the order of the lower Court, which had dismissed the above mentioned petition of the trustees, said : "We see no reason why they (the trustees) should have been admitted as parties.   They are assignees under a voluntary deed made to them *pendente lite* and subject to all the equities of the defendant.   They stand in no better position than the person under whom they claim and can set up no defence which he cannot.   Their rights are entirely in subjection to his and to admit them as parties now would delay the complainant's proceedings and could not change the result as against this defendant.   If assignees *pendente lite* can claim the right of becoming parties the litigation by successive assignments might be rendered interminable.   *Sedgwick* v. *Cleveland,* 7 Paige, 290; *Story's Equ. Plea,* sec. 156."   See also *Inloes* v. *Harvey,* 11 Md. 524; *Hall* v. *Jack,* 32 Md. 253.   It is contended that whilst this doctrine is undoubtedly correct the statutes or provisions of the Code hereinbefore alluded to do not contemplate that a proceeding like this should be revived by summoning in the *heir at law* of the deceased fraudulent grantee, but that they mean by using the term "legal representatives" that the *purchaser* from such grantee and none other should be brought in.   But this view, regardless of the supposed hardships resulting from an adherence to the provisions of the Code, cannot prevail, because the proceeding to revive whether by bill of revivor or by a mere petition, must be taken against the proper legal representative according to the nature of the subject-matter.   If real estate be in controversy, the heir at law must be made a party.   If personal estate only is involved the administrator must be summoned in.   *Hawkins, Trustee,* v. *Chapman et al.,* 36 Md. 97.   Proceedings must be conducted against those in privity with the deceased, such as his devisee, executor, administrator, or legatee.   *Miller's Equity,* sec. 203.   Independently of all that has just been said on this

branch of the case, the Realty Company is, upon its own application, in point of fact, an actual party to the cause.    It came in by petition.    It was made a party at its own request and surely it is in no condition to complain, after thus becoming a party, that it was not made a party upon the motion or petition of the plaintiff.    Being a party, it may make its defence as fully as though it had been brought in upon the petition of the plaintiff and it cannot be prejudiced by joining with it, as a co-defendant, the heir at law of Frank St. Clair Smith, who in his lifetime was one of the original defendants.

We now come to the fifth and last ground upon which the Realty Company relies to sustain its demurrer, namely, that the bill of complaint and petition show on their face that the petitioner has been guilty of laches.    It has often been said by this Court and other tribunals that what will constitute such laches as will bar the right of parties to recover on a claim purely equitable must depend upon the particular facts and circumstances of each case.    *Demuth* v. *Old Town Bank*, 85 Md. 326.    "Strictly speaking" (quoting from the last-named case), "and using the term as it is understood in law, laches is such neglect or omission to assert a right as taken in conjunction with lapse of time, more or less great, and other circumstances causing *prejudice* to an adverse party, operates as a bar in a Court of equity."    LORD ELLENBOROUGH observed in *Selby* v. *Abithoe*, 4 M. & S. 462, "laches is a neglect to do something which by law a man is obliged to do."    Obviously then there must be a duty to do some act; a failure to do that duty and attendant circumstances which cause *prejudice* to an adverse party before the doctrine can be successfully invoked.    Mere lapse of time without more unless of sufficient duration to amount to and constitute the bar of the Statute of Limitations will not be sufficient.    There are five reasons assigned why the doctrine of laches should apply.    *First.* The failure, prior to Elizabeth Smith's death, to take notice of an affidavit filed by her on May 28th, 1901.    *Second.* The failure to take notice of Frank St. Clair Smith's suggestion of October 15th, 1901, that the case had abated.    *Third.* The

failure on February 14th, 1902, to mention Elizabeth Smith's death and to make Wiegal a party. *Fourth.* The death of Elizabeth Smith, Frank St. Clair Smith, and one Alcinda Williams, alleged to be important witnesses. *Fifth.* The staleness of the claim when suit was brought.

With respect to the first of these five reasons but little need be said. The appellant was under no obligation to take notice of the affidavit filed on May 28th, 1901. It was an affidavit of Elizabeth Smith to the effect that she had never authorized any person to file an answer for her and that she was never indebted in any sum whatever to the plaintiff, Annie Lampkin. That affidavit was filed as an exhibit to the answer of Frank S. Smith. The demurrer, which we are considering assails the bill of complaint and the petition of the appellant filed on June 1st, 1903, in which the appellant asked to be made a party plaintiff in the cause. In considering that demurrer we have only to look at the sufficiency of the averments of the bill and of the petition. Collateral matter, like affidavits, filed as exhibits to an answer can not be considered in disposing of that demurrer any more than could the answer itself be heeded. Secondly, nor is there any force in the reason which avers that the appellant was guilty of laches because of the failure to take notice of Frank St. Clair Smith's suggestion of October 15th, 1901, that the case had abated; since the whole object of the petition of June 1st, 1903, was to secure an order admitting the petitioner to become plaintiff in the case, and until the petitioner did become plaintiff in the case, he was in no position to take notice of the suggestion that the suit had abated. The third reason put forth for the application of the doctrine of laches, namely, the failure on February 14th, 1902, to mention Elizabeth Smith's death and to make Wiegal a party, is also untenable, for the reason that the whole purpose of that petition as of the subsequent one of June 1st, 1903, was to secure the passage of an order admitting Sinclair to become a party plaintiff in his capacity as administrator, and until he had become such party, he was in no position to ask that Wiegal be summoned

in as a defendant. But as we have already stated Wiegal, a purchaser *pendente lite*, was not a necessary party in any event and therefore the failure to bring him in cannot be considered laches in any sense. The fourth reason, namely, the death of Elizabeth Smith and Frank S. Smith and Alcinda Williams, cannot impute laches to the plaintiff. In the petition of June 1st, to which the demurrer applied, the reasons are specifically given why an application was not made earlier for an amendment to the proceedings by the admission of Sinclair as a party plaintiff. It will be remembered that the original bill was filed on April 22nd, 1901, by. Annie E. Lampkin. The petition of June 1st, 1903, avers, and the demurrer admits, that Annie E. Lampkin died on the 31st of May, 1901, leaving a last will and testament in which Alcinda Williams was named as executrix; that at that time Alcinda Williams was seriously ill and so continued until the 13th day of October following, when she died without having qualified as executrix under the will; that on the 27th of November, 1901, the will of Annie E. Lampkin was propounded for probate in the District of Columbia and Frank St. Clair Smith entered a caveat thereto; that this caveat proceeding was adjusted February 7th, 1902, and on the 10th of the same month letters of administration were granted to Sinclair, the petitioner, and on the 14th of February in the same year, he filed his petition to be made a party plaintiff in this cause; and upon that petition the order of October 14th, making him a party plaintiff was passed. There was obviously no such delay, as amounted to laches, in taking the steps thus adopted to place the case in a position where it could be brought to a hearing. The death of the two defendants, Elizabeth Smith and her son, Frank Smith, and of the executrix, Alcinda Williams, whilst it might deprive the Realty Company of the benefit of their testimony, cannot be considered as reflecting in any way upon the diligence and promptness with which the appellant has pursued his remedies. Finally, the alleged staleness of the claim when suit was brought cannot be relied on to show laches of any kind. All the parties to the transaction were living when the

bill was filed.   One of the defendants, Elizabeth Smith, in her answer admitted the existence of the debt, but that circumstance is not material inasmuch as we are dealing solely with the demurrer to the bill and petition of June 1st.   What we have said in a previous part of this opinion with relation to the Statute of Limitations will equally apply to the subject of laches with which we are now dealing.   The bill makes a distinct averment of a subsisting indebtedness which still remained unpaid and unsatisfied when the bill was filed and as there is nothing on the face of the bill to indicate how long that indebtedness had been overdue it is impossible to say that the claim was a stale one when the proceedings were inaugurated. The proof may show that the claim was stale, but the face of the papers do not disclose it and it is with the case as made upon the pleadings that we are now confronted.   We must hold that there is nothing appearing in them to indicate that there was unnecessary or prejudicial delay amounting to laches in inaugurating and prosecuting this proceeding.

We have thus, with some prolixity, gone through this complicated record and we have reached the conclusion that the order of Court sustaining the demurrer filed June 15th, 1903, to the bill of complaint and to the petition of June 1st, was erroneous and that the demurrer instead of being sustained should have been overruled.

The order sustaining the demurrer will therefore be reversed.   The cause will be remanded for further proceedings in accordance with the views we have expressed in this opinion.

> *Order reversed with costs above and*
> *below, and cause remanded.*

(Decided March 22nd, 1904.)